**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| BALL CORPORATION, an Indiana corporation and FACTORY MUTUAL INSURANCE COMPANY, a Rhode Island corporation, as subrogee, <br><br>      Plaintiffs, <br><br>  v. <br><br>AIR TECH OF MICHIGAN, INC., a Michigan corporation, <br><br>      Defendant. | ) ) ) ) ) ) ) ) 4:16-cv-00042-RL-APR ) ) ) ) ) ) ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs BALL CORPORATION and FACTORY MUTUAL INSURANCE COMPANY ("FMIC"), as subrogee, by and through their attorneys Mark N. Senak and Senak Keegan Gleason & Smith, Ltd., pursuant to Fed.R.Civ.P 56 and N.D.Ind.L.R. 7-1(b)(3) and 56-1, hereby submits the following memorandum in support of their Motion for Partial Summary Judgment on the issue of who is the real party in interest.

**STATEMENT OF MATERIAL FACTS[1]**

This case arises out of a fire at Plaintiff Ball Corporation's aluminum can manufacturing plant in Monticello, Indiana, on May 23, 2014. [DE 9, Defendant's Answers ¶ 7] Plaintiffs' Complaint alleges the fire was caused by the Defendant's failure to properly clean an internal bake oven used in the production process. [DE 1, Plaintiff's Complaint]

At the time of the fire, the Monticello Plant was insured by Plaintiff FMIC. *See*, **Exhibit 1**, Declaration of Andrew Brooslin, Exhibit B, Joint Prosecution Agreement ¶ 2, p. 1.  Ball

---
[1]      Submitted pursuant to N.D.Ind.L.R. 56-1(a).

Corporation made a claim with FMIC under the policy for the property damage and other covered losses caused by the fire.  *Id.*  The total amount of the loss was $12,157,474.  *Id.*  Under the terms of the FMIC policy, Ball Corporation had a $2 million deductible that applied to the claim.  *Id.*  FMIC paid Ball Corporation $10,157,474, which did not include the applicable deductible.  *Id.*

On May 18, 2016, Ball Corporation executed a Loan Receipt, which provided that the amount paid under the policy ($10,157,474) would be repaid to FMIC "only in the event and to the extent that any net recovery is made from any person, persons, corporation, other parties" for causing the damage.  *See*, **Exhibit 1**, Affidavit of Andrew Brooslin, Exhibit A, Loan Receipt.

On March 13, 2018, Ball Corporation and FMIC entered into a Joint Prosecution Agreement.  *See*, **Exhibit 1**, Affidavit of Andrew Brooslin, Exhibit B, Joint Prosecution Agreement (hereinafter JPA).  The JPA states that FMIC paid Ball Corporation "$10,157,474.00 for certain portions of the loss and damages sustained by Ball Corporation" and that "Ball Corporation has contributed its deductible of $2,000,000 to pay for its losses and damages."  *Id.* at ¶ 2, p. 1.  The JPA provides that FMIC and Ball Corporation "agree to work jointly in pursuing various causes of actions" against any party responsible for causing the loss, and that "Ball Corporation agrees that [FMIC] may pursue the Claims and file a lawsuit which names Ball Corporation as the plaintiff. . ."  *Id.* at ¶ 3, p. 2.

The parties agreed that each would pay any costs and expenses needed to pursue recovery *pro rata* based on their relative percentages of the total loss.  *Id.* at ¶ 5, p. 5.  FMIC agreed to advance any costs or expenses to pursue recovery and Ball Corporation agreed to reimburse FMIC the amount it advanced from any recovery.  *Id.*  In consideration for advancing the costs and expenses, FMIC retained the right to "control certain aspects of the litigation," but agreed "that it will advise and consult with Ball Corporation regarding any aspect of the litigation, including

settlement." *Id.* at ¶ 6, p. 5.  If there is a recovery by settlement, judgment or otherwise, the parties agreed to "share in the distribution of recoveries according to the proportionate share of each party's loss in relation to the total provable damages and losses which have arisen from the incident." *Id.* at ¶ 7, p. 6.

## CHOICE OF LAW

Federal Rule of Civil Procedure 17(a) requires that "[e]very action shall be prosecuted in the name of the real party in interest."  Fed.R.Civ.P 17(a)  But, when federal court jurisdiction is predicated on diversity, the determination of the real party in interest is based on the law of the forum state.[2]  *Metal Forming Technologies, Inc. v. Marsh & McLennan Co.*, 224 F.R.D. 431, 434 (S.D.Ind. 2004).  *Shapo v. Underwriters Mgmt. Corp.*, 2002 WL 31155059, at *6 (N.D.Ill. 2002), (citing *American Nat'l Bank v. Weyerhaeuser Co.,* 692 F.2d 455, 459–60 (7th Cir. 1982)).

## ARGUMENT

Plaintiffs are entitled to summary judgment on the issue of whether Ball Corporation is the real party in interest to the claims brought against the Defendant.  There is no genuine issue of material fact that Ball Corporation has a $2 million deductible under the FMIC policy that was excluded from the amount paid by FMIC to adjust the loss.  It is also undisputed that Ball Corporation's $2 million deductible is included in the damages sought in the present case. Moreover, Ball Corporation singed a Loan Receipt and entered into a Joint Prosecution Agreement with FMIC that provided FMIC would loan Ball Corporation the funds needed to repair the Monticello plant so it could resume production and that Ball Corporation would repay the loan only to the extent of any recovery in the present case.  Finally, the JPA provides that Ball

---

[2] Like Federal Rule 17(a), Indiana Trial Rule 17 also provides "[e]very action shall be prosecuted in the name of the real party in interest." Ind. T.R. 17.

3

Corporation would receive its *pro rata* share of any recovery by judgment or settlement. Under these circumstances, Indiana courts and the Seventh Circuit have ruled the insured is the real party in interest so as to permit the present action to be brought in the name of Ball Corporation only.

**I.   BALL CORPORATION HAS AN ECONOMIC INTEREST IN THE DAMAGES CLAIMED AGAINST THE DEFENDANT**

The Indiana Appellate Court addressed this precise issue, albeit on a smaller scale, in *Risner v. Gibbons*, 136 Ind.App. 45, 197 N.E.2d 184 (Ind.App. 1964). In *Risner*, the plaintiff was involved in an automobile accident allegedly caused by the defendant. *Id.* at 46 – 47, 197 N.E.2d at 185. At the time of the accident, the plaintiff had automobile insurance coverage with State Farm Mutual Automobile Insurance Company. *Id.* The plaintiff made a claim with State Farm under the policy's collision coverage, and State Farm paid the plaintiff $1,050.00, which was the value of the vehicle less plaintiff's $50.00 deductible interest. *Id.* at 185, 136 Ind.App. at 47.

Thereafter, the defendant's insurer paid the plaintiff $75.00 and obtained a release of all claims from the plaintiff. *Id.* at 186, 136 Ind.App. at 47. State Farm then brought an action against the defendant in the name of its insured seeking the amount it paid its insured under the policy. *Id.* at 186, 136 Ind.App. at 48. The defendant moved to dismiss the complaint claiming State Farm, not the plaintiff, was the real party in interest and the suit had to be maintained in State Farm's name. *Id.*

The Indiana Appellate Court in *Risner* began its analysis by stating that "so long as the assured maintains any interest in a claim he is a proper party in interest and may maintain litigation in his own name, or such litigation may be maintained in the assured's own name." *Id.* at 49 – 50, 197 N.E.2d at 187. The *Risner* court further commented that "where the assured has had a full and complete settlement with said insurance company he no longer is a proper party in interest and such litigation must be maintained in the name of the assured's assignee and subrogee." *Id.* The

4

Court in *Risner* concluded that, despite the language of the Release, the plaintiff "still maintained and reserved a sufficient interest in the litigation to protect his insurance carrier, thus enabling it to bring suit in the name of its assured." *Id.* at 51, 197 N.E.2d at 188.

Like the insured in *Risner*, Ball Corporation has a deductible interest under the FMIC policy, which was excluded from the payment FMIC made to Ball Corporation. Since Ball Corporation has not been fully compensated by the insurance payments it received from FMIC, under the Indian Appellate Court's ruling in *Risner*, Ball Corporation has a sufficient interest in the present case to be the real party in interest.

The argument that Ball Corporation is the real party in interest in the present case is even more compelling than in *Risner*. In *Risner*, the defendant's insurer paid the plaintiff an amount in excess of her deductible. Arguably, this payment, when combined with the payment the plaintiff in *Risner* received from State Farm, fully compensated the plaintiff for the loss of his vehicle. Yet, the court in *Risner* still concluded the insured was the real party in interest.

In the present case, it is undisputed neither the Defendant nor its insurer has made any payment to Ball Corporation as the defendant's insurer did in *Risner*. Thus, there is no genuine issue of material fact that Ball Corporation has not been fully compensated for the losses it sustained as a result of the Defendant's alleged misconduct. Absent a factual issue, Plaintiffs are entitled to summary judgment on the issue that Ball Corporation is the real party in interest.

## II.   THERE HAS BEEN NO ASSIGNMENT OF BALL'S INTEREST TO FMIC

The Defendant may contend Ball Corporation assigned its interest in the litigation to FMIC when it accepted the payment from FMIC and, therefore, FMIC is the real party in interest. Any such argument is belied by the plain, unambiguous provisions of the Loan Receipt and Joint Prosecution Agreement

5

The Seventh Circuit considered the effects of a Loan Receipt on the issue of who was the real party in interest in *First National Bank of Ottawa v. Lloyd's of London*, 116 F.2d 221 (7th Cir. 1940). In *Bank of Ottawa*, a local bank requested a shipment of currency ($60,000) from the Federal Reserve Bank in Chicago. *Id.* at 223. The Federal Reserve sent the money to the bank by registered mail. *Id.* When employees of Ottawa Bank picked up the money from the Post Office, they were held up by two armed robbers. *Id.*

Ottawa Bank made a claim under its insurance policy with Lloyd's of London, but Lloyd's denied coverage. *Id.* at 222. The Federal Reserve also made a claim with its insurers, which paid the claim. *Id.* at 223 – 224. As part of the settlement of the insurance claim, the Federal Reserve and Ottawa Bank executed a Loan Receipt, which read as follows:

> $18,000,[3] October 7, 1938
>
> Received from Franklin Fire Insurance Company (Newhouse and Sayre) Eighteen Thousand and no/100 Dollars, as a loan and repayable only to the extent of any net recovery we may make from any person or persons, corporation or corporations, on account of loss by hold-up to our property on or about October 5, 1938, or from any insurance effected by such person or persons, corporation or corporations.
>
> As security for such repayment, we hereby pledge to said Franklin Fire Insurance Company the said recovery and deliver to it all documents necessary to show our interest in said property, and we agree to enter and prosecute suit against such person or persons, corporation or corporations on account of said claim for said loss, with all due diligence, at the expense and under the exclusive direction and control of said Franklin Fire Insurance Company.
>
> The First National Bank of Ottawa, Ottawa, Ill. By: Fred A. Gerding, President.
> Approved:
> Federal Reserve Bank of Chicago
> By: O. J. Netterstrom
> Assistant Vice President

---

[3] The loss was paid with six separate drafts, aggregating in the amount of $60,000, because the loss fell within the policies of six separate insurers. *Bank of Ottawa*, 116 F.2d at 223. The quoted Loan Receipt was for one of the payments, but was identical to the other Loan Receipts, but for the name of the insurer and the amount of payment. *Id.* at 223, fn. 1.

6

*Id.* at 223, fn 1.  Thereafter, Ottawa Bank filed suit against Lloyd's seeking payment under the Lloyd's policy.  *Id.* at 223.

Lloyd's argued Ottawa Bank's claims should be dismissed because the entire loss had been paid by the Federal Reserve's insurer, and any claims against Lloyd's had to be brought in the name of the Federal Reserve's insurers because it was the real parties in interest.  *Id*. at 225.  Citing the U.S. Supreme Court's holding in *Luckenbach v. W. J. McCahan Sugar Refining Co*., 248 U.S. 139 (1918),[4] the Seventh Circuit in *Bank of Ottawa* commented, "[f]or many years it has been customary for insurers, in order to save [the] rights of their assureds and to promptly place them in funds, so that their business might be continued without embarrassment, to lend to their assureds the amount of the loss, repayable only out of moneys collected on account of the loss." *Id.* at 226.  The Seventh Circuit concluded that such arrangements were loans, not payments of insurance. *Id.*  For this reason, the court in *Bank of Ottawa* held "there was no subrogation," and the insured, not its insurers, was the real party in interest. *Id.* at 225-26. The Seventh Circuit's holding in *Bank of Ottawa* has been cited with approval by other courts within this Circuit. *See, e.g., In re Chicago Flood Litigation*, No. 93 C 1214, 1993 WL 181881, at *2 (N.D.Ill. 1993); *Armour Pharmaceutical Co. v. Home Insurance Co.*, 60 F.R.D. 592 (N.D.Ill. 1973).

The holding in *Bank of Ottawa* was also cited with approval by the Indiana Appellate Court in *Klukas v. Yount*, 121 Ind.App. 160, 98 N.E.2d 227 (Ind.App. 1951).  In *Klukas*, the plaintiff was injured while a passenger in a taxi cab that was involved in a collision with another vehicle.  *Id.* at 162 – 163, 98 N.E.2d at 228.  The other vehicle was insured by State Farm Mutual Automobile Insurance Company.  *Id.*  The plaintiff in *Klukas* settled her claims against the driver of the other

---

[4]     In *Luckenbach v. W. J. McCahan Sugar Refining Co.,* 248 U.S. 139 (1918) condoned the use of "loan receipts" as a means of allowing a party to maintain an action against the original tortfeasor even though another has loaned it funds in the amount of the damages sustained.

7

vehicle for a $2,500 payment from State Farm, and signed a loan receipt that provided this sum was "repayable only to the extent of her recovery." *Id.* at 164, 98 N.E.2d at 228.  The plaintiff in *Klukas* then filed suit against the driver of the taxi cab, seeking additional damages. *Id.*

The defendant in *Klukas* argued State Farm was a necessary party-plaintiff on the basis that State Farm was the real party in interest. *Id.* at 164, 98 N.E.2d at 228 - 29.  Noting there were "no cases on this question in this state," the Appellate Court in *Klukas* looked to other jurisdictions where it found "innumerable" cases covering this question, including the Seventh Circuit's opinion in *Bank of Ottawa*. *Id.* at 164 - 165, 98 N.E.2d at 229 (citations omitted).  Adopting the Seventh Circuit's reasoning in *Bank of Ottawa* and similar cases from other jurisdictions, the court in *Klukas* ruled, "[a] loan receipt is an instrumentality which permits an insurer to pay an insured speedily and yet press in court to recoup its losses from the wrongdoer without the insurer appearing by name, thereby avoiding some of the consequences of subrogation." *Id.* at 165, 98 N.E.2d at 229.  Applying that reasoning to the facts at issue, the appellate court in *Klukas* held "the loan did not amount to a payment of the loss nor did the lender, State Farm Mutual Automobile Insurance Company, become subrogated to the claim of the appellee against appellant so as to require the action to be brought in its name." *Id.*

There can be no genuine issue of material fact that the Loan Receipt singed by Ball Corporation in the present case evidences the payment from FMIC was intended as a loan, not a complete assignment of Ball Corporation's interest in the claims against the Defendant.  But for the amount of the payment and the names of the parties, the Loan Receipt signed by Ball Corporation in the present case is identical in substance to the Loan Receipt analyzed by the Seventh Circuit in *Bank of Ottawa*.  Below is a comparison of the terms of the Bank of Ottawa Loan Receipt and the Loan Receipt signed by Ball Corporation (terms common to both documents

are underlined and in bold lettering):

| **BANK OF OTTAWA LOAN RECEIPT** | **BALL CORPORATION LOAN RECEIPT** |
|---|---|
| **Received from** Franklin Fire Insurance Company (Newhouse and Sayre) Eighteen Thousand and no/100 Dollars, **as a loan** and **repayable only to the extent of any net recovery** we may make **from any person or persons, corporation or corporations, on account of** loss by hold-up to our property on or about October 5, 1938, or from any insurance effected by such person or persons, corporation or corporations.<br><br>**As security for such repayment, we hereby pledge to said** Franklin Fire **Insurance Company** the said **recovery and deliver to it all documents necessary to show our interest in said property, and we agree to enter and prosecute suit against such person or persons, corporation or corporations** on account of said claim for said loss, **with all due diligence, at the expense and under the exclusive direction and control of said** Franklin Fire **Insurance Company.**<br><br>*Bank of Ottawa*, 116 F.2d at 223, fn 1. | **RECEIVED FROM** FACTORY MUTUAL INSURANCE COMPANY the sum of ten million, one-hundred fifty-seven thousand, four-hundred seventy-four & 0/100 Dollars **as a loan**, without interest, under Policy No. FN112, **repayable only** in the event and **to the extent** that **any net recovery** is made **from any person persons, corporation or corporations**, or other parties, **on account of** claim by fire, sprinkler leakage, or other casualty for which this company may be liable occasioned to insured property on or about the 21 day of May 2014.<br><br>**As security for such repayment, we hereby pledge to said Insurance Company** whatever **recovery** we may make, **and deliver to it** herewith **all documents necessary to show our interest in said property and we** hereby **agree to** present claim promptly and, if necessary, commence, **enter** into **and prosecute suit against such person or persons, corporation or corporations,** through whose negligence the aforesaid claim was caused, or who may otherwise be responsible therefore, **with all due diligence** in our own name, but **at the expense** of **and under the exclusive direction and control of** the **said Insurance Company.**<br><br>Exhibit 1, Brooslin Declaration, Exhibit B. |

Both the Ball Loan Receipt and the Loan Receipt in *Bank of Ottawa* state the payment is made "as a loan." Both the Ball Loan Receipt and the Loan Receipt in *Bank of Ottawa* provide the loan is "repayable only in the event and to the extent that any net recovery is made." Finally, it should not be overlooked that the document signed by Ball Corporation in the present case is plainly titled "Loan Receipt." *See*, **Exhibit 1**, Brooslin Declaration, Exhibit B. Indiana state courts have also approved the use of loan receipts in analogous cases. *American Transport Co. v. Central Indiana Ry. Co.*, 255 Ind. 319, 264 N.E.2d 64 (Ind. S.C. 1970); *Burkett v. Crulo Trucking Co.*, 171 Ind. App. 166, 355 N.E.2d 253 (Ind.App. 1976); *Northern Indiana Public Service Company v. Otis,* 145 Ind.App. 159,176, 250 N.E.2d 378, 390 (Ind. App. 1969) (loan receipt did not amount to a payment of loss and insurer did not become subrogated to the claim so as to require the action to be brought in insurer's name).

Any doubt that Ball Corporation retained an interest in the pending claims against the Defendant is resolved by the plain, unambiguous provisions of the JPA. The JPA states that the total amount of the losses caused by the fire was $12,157,474.00. *See*, **Exhibit 1**, Brooslin Declaration, Exhibit B, JPA ¶ 2, p. 1. The JPA provides "Ball Corporation has contributed its deductible of $2,000,000 to pay for its losses and damages," and FMIC paid Ball Corporation $10,157,474.00. *Id.* The JPA states the FMIC payment was "for certain ***portions*** of the losses and damages sustained by Ball Corporation," evidencing the FMIC payment did not fully compensate Ball Corporation for the losses sustained in the fire. *Id.* (emphasis added).

Finally, the JPA clearly and unambiguously states that Ball Corporation will receive a portion of any recovery from the pending lawsuit. The JPA states that "[a]fter all outstanding investigation and litigation costs and expenses have been paid, any remaining recoveries shall be distributed to Factory Mutual ***and*** Ball Corporation on a *pro rata* basis." *Id.* at ¶ 7, p. 6. "***This***

***<u>means that Factory Mutual and Ball Corporation will share in the distribution of recoveries</u>*** according to the proportionate share of each party's loss in relation to the total provable damages and losses which have arisen from the incident." *Id.* 9. (emphasis added). *See, Risner,* 136 Ind.App. at 50, 197 N.E.2d at 187 (the question of the distribution of the proceeds from any recovery is a matter between the insured and the insurer).

The plain language of the Loan Receipt and the JPA leaves no doubt that the amount FMIC paid to Ball Corporation was in the form of a loan and the payment did not fully compensate Ball for the damages since the payment excluded Ball's $2 million deductible interest under the policy. More critically, the Loan Receipt and the JPA further evidence that Ball Corporation will receive a portion of any recovery based on the percentage of its deductible interest to the total provable damages. Given these undisputed facts, there can be no genuine issue of material fact that Ball Corporation is the real party in interest, and the pending action may be brought in the name of Ball Corporation only.

### III. THE PURPOSE OF RULE 17 WILL NOT BE THWARTED BY ALLOWING BALL CORPORATION TO PURSUE THE CLAIMS IN ITS NAME ONLY

One purpose of Rule 17 is to enable the defendant to present any defenses against the proper party, thereby avoiding multiple lawsuits and achieving finality of judgment. *See, e.g., Intown Properties Management, Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 170 (4th Cir. 2001). *See also*, 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1541 (3d ed. 2018). Rule 17(a)(3) gives the district court discretion to permit ratification of the action by another party who has an interest in the litigation. *See, e.g., Reliant Airlines, Inc. v. County of Broome*, 1993 WL 276747, at *3 (N.D.N.Y.,1993) (when an insurer has ratified an action by its insured, the insurer no longer is a participant in the litigation, thus leaving the insured as the litigating party in interest).

Should the Court find Ball Corporation is the real party in interest, such that the present action may be maintained solely in the name of Ball Corporation, FMIC is prepared to file a certificate affirming that Ball Corporation is authorized to prosecute the action on FMIC's behalf and that FMIC agrees to be bound by any final determination in case.

Allowing Ball Corporation to pursue the claims in its name only would also further the purpose of Federal Rules of Evidence 411.  Federal Rule of Evidence 411 provides, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." Fed.R.Evid. 411.  *See also*, *Stephens v. City of Lawrence*, 2015 WL 9165592, at *1 (S.D.Ind., 2015) (granting motion *in limine* to exclude evidence of insurance pursuant to Fed.R.Evid. 411) While Rule 411 applies to liability insurance, the policy considerations underlying the Rule are equally applicable in cases, such as the present one, involving claims made under property insurance policies.

Courts have generally concluded that "[e]vidence of insurance coverage is ordinarily inadmissible, since the existence of coverage so frequently distracts the jury from the essential issues which it is to resolve." *Stephens*, 2015 WL 9165592 at *1 (S.D.Ind., 2015) (citing *Braun v. Lorillard, Inc.*, 1996 WL 14033 at *1 (N.D. Ill. 1996). Often, evidence of insurance coverage is irrelevant and prejudicial unless offered for a permissible purpose under Rule 411, and courts frequently exclude evidence of insurance from being admitted or mentioned before the jury.  *See, e.g., Stephens*, 2015 WL 9165592, at *1 (S.D.Ind., 2015).

Finding that Ball Corporation is the real party and correspondingly omitting FMIC as a

named plaintiff would prevent the jury from impermissibly considering Ball Corporation's insurance status when deliberating on the merits of the claims and defenses. Moreover, there are no issues of agency, ownership, or control that would permit the introduction of Ball Corporation's insurance status, and whether evidence of insurance would be admissible to prove witness bias cannot be determined until the time of trial. But, if FMIC is a named plaintiff, the jury will be informed of Ball Corporation's insurance status without the Defendant being required to make the requisite evidentiary showing under Rule 411. Such a result would be unduly prejudicial since, for the reasons previously stated, *supra*, Section II and III, FMIC is not the real party in interest.

## CONCLUSION

There can be no genuine issue of material fact that Ball Corporation is the real party in interest in the claims asserted in the present case. It is undisputed that Ball Corporation had a $2 million deductible under the FMIC policy. As such, the payments Ball Corporation received from FMIC did not completely cover the entire loss Ball Corporation sustained as a result of the fire. Under the terms of the Loan Receipt and the Joint Prosecution Agreement, Ball Corporation is obligated to repay the loan only to the extent of any recovery. The Joint Prosecution Agreement further makes clear that Ball Corporation will receive a portion of any recovery achieved in the present case by judgment or settlement. Finally, any risk of multiple lawsuits has been eliminated by the terms of the Joint Prosecution Agreement or by FMIC's willingness to ratify Ball Corporation's authority to prosecute the action on FMIC's behalf, and affirming that FMIC agrees to be bound by any final determination of the case.

August 19, 2019               Respectfully submitted,

                                BALL CORPORATION and
                                FACTORY MUTUAL INSURANCE COMPANY

                                By: ___*s/ Mark N. Senak*_____
                                  Mark N. Senak, one of its attorneys

Mark N. Senak
SENAK KEEGAN GLEASON & SMITH, LTD
566 West Adams Street, Suite 750
Chicago, Illinois  60661
T: 312-214-1400 / F: 312-214-1401
Email: msenak@skgsmlaw.com

## CERTIFICATE OF SERVICE

     I, Mark N. Senak, hereby certify that on August 19, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Indiana by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                            By: __*s/ Mark N. Senak*_____