# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| BALL CORPORATION, an Indiana corporation and FACTORY MUTUAL INSURANCE COMPANY, a Rhode Island corporation, as subrogee, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 4:16-cv-00042-RL-APR ) ) |
| AIR TECH OF MICHIGAN, INC., a Michigan corporation, | ) ) ) |
| Defendant. | ) ) |

## DECLARATION OF ANDREW S. BROOSLIN

I, ANDREW S. BROOSLIN, after having been duly sworn on oath, deposes and states that the information and statements contained in this Declaration are based on personal knowledge and if called as a witness I would competently testify to the following:

1. I am an attorney duly licensed in the State of Massachusetts.

2. I am currently employed as Staff Vice President, Litigation Senior Counsel, for Factory Mutual Insurance Company (hereinafter "FMIC").

3. My job duties include managing subrogation claims brought by FMIC either individually or in conjunction with its policyholders.

4. These duties require me to have knowledge of FMIC's claims adjustment procedure, its subrogation process, and its file system.

5. In the course of performing my job duties, I have developed a personal knowledge of the terms and conditions of Loan Receipts and Joint Prosecution Agreements entered into between FMIC and its policyholders.

6. I was one of the persons on behalf of FMIC involved in pursuing subrogation of the claim made by Ball Corporation as a result of a fire that occurred on May 23, 2014, at Ball Corporation's Monticello, Indiana, manufacturing plant (hereinafter the "Incident").

Page 1 of 3

7. As a result of my involvement with the subrogation of the claim, I have personal knowledge of the content of the claim file for the Incident.

8. I am also supervising the captioned litigation on behalf of FMIC.

## **EXHIBIT A: Loan Receipt**

9. Attached hereto as Exhibit A is a true and accurate copy of the Loan Receipt maintained in the FMIC file system in the claim file for the Incident.

10. The Loan Receipt attached as Exhibit A was signed on or about May 18, 2016, at or about the time FMIC paid Ball Corporation the amount stated in the Loan Receipt pursuant to the FMIC policy.

11. The Loan Receipt was signed by Charles E. Baker, Vice President of the Ball Corporation, the person designated by Ball Corporation as having sufficient knowledge of the Incident and the terms and conditions of the document to sign the document on behalf of Ball Corporation.

12. The Loan Receipt attached as Exhibit A is kept by FMIC in the course of its regularly conducted business activity as part of the claim file for the Incident.

13. It is the regular practice of FMIC to have its insureds sign Loan Receipts for claims which FMIC intends to pursue subrogation and to maintain those Loan Receipts in the corresponding claim file in the FMIC file system.

## **EXHIBIT B: Joint Prosecution Agreement**

14. Attached hereto as Exhibit B is a true and accurate copy of the Joint Prosecution Agreement maintained in the FMIC file system in the claim file for the Incident.

15. The Joint Prosecution Agreement attached as Exhibit B was signed on or about the dates reflected on page 6 of the document, at or about the time FMIC and Ball Corporation decided to jointly pursue a claim against the Defendant to seek recovery for the damages resulting from the Incident.

16. I signed the Joint Prosecution Agreement on behalf of FMIC because I had sufficient knowledge of the Incident and the terms and conditions of the document to sign the document on behalf of Ball Corporation.

17. The Joint Prosecution Agreement was signed by Charles E. Baker, Vice President of the Ball Corporation, the person designated by Ball Corporation to have sufficient knowledge

of the Incident and the terms and conditions of the document to sign the document on behalf of Ball Corporation.

18. The Joint Prosecution Agreement attached as Exhibit B is kept by FMIC in the course of its regularly conducted business activity as part of the claim file for the Incident.

19. It is the regular practice of FMIC to have its insureds sign Loan Receipts for claims which FMIC intends to pursue subrogation and to maintain those Loan Receipts in the corresponding claim file.

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746(2), the undersigned declares under penalty of perjury that the foregoing statements are true and correct.

Executed on:

Date: _August 14, 2019_____        By: _____

Andrew S. Brooslin

# Exhibit A



# LOAN RECEIPT

**DATED:** 18-May-2016

**CLAIM NUMBER:** DF085
**LOSS ID:** 338984
**CLAIM ID:** 434242

### $10,157,474.00

RECEIVED FROM FACTORY MUTUAL INSURANCE COMPANY the sum of <u>ten-million, one-hundred fifty-seven thousand, four-hundred seventy-four & 0/100</u> Dollars as a loan, without interest, under Policy No. <u>FN112</u>, repayable only in the event and to the extent that any net recovery is made from any person persons, corporation or corporations, or other parties, on account of claim by fire, sprinkler leakage, or other casualty for which this company may be liable occasioned to insured property on or about the <u>23</u> day of <u>May</u>, 2014.

As security for such repayment, we hereby pledge to said Insurance Company whatever recovery we may make, and deliver to it herewith all documents necessary to show our interest in said property and we hereby agree to present claim promptly and, if necessary, commence, enter into and prosecute suit against such person or persons, corporation or corporations, through whose negligence the afore said claim was caused, or who may otherwise be responsible therefore, with all due diligence in our own name, but at the expense of and under the exclusive direction and control of the said Insurance Company.

**Name of Insured:** Ball Corporation

**Location of Loss:** Monticello, IN

BY *Charles E. Baker*

**WITNESS:** *Suzette Vosseller*

LAW REQUIRES THE FOLLOWING ON ALL CLAIM FORMS:
ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO DEFRAUD AN INSURER, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION COMMITS A FELONY.

loanreceipt.dot rev.1/10eeb

**PRIVILEGE AND CONFIDENTIAL**

**FMIC 001781**

# Exhibit B

## JOINT PROSECUTION AGREEMENT

In consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Ball Corporation and Factory Mutual Insurance Company ("Factory Mutual") hereby enter into this Joint Prosecution Agreement ("Agreement"):

### 1.   PARTIES

Ball Corporation is a provider of metal packaging for beverages, foods and household products, and of aerospace and other technologies and services to commercial and governmental customers.

Factory Mutual is a property insurance company that issued a policy of insurance that provided coverage to Ball Corporation for the Incident described in Paragraph 2.

### 2.   DAMAGES AND FACTORY MUTUAL POLICY

On or about May 23, 2014, Ball Corporation sustained property damage and other losses at its manufacturing facility in Monticello, Indiana, when a fire ignited in or about the fan housing of the Internal Bake Oven ("IBO") on Line No. 2 ("Incident"). Ball Corporation was insured for certain risks and losses pursuant to a policy of property insurance issued by Factory Mutual ("Policy") which was in effect on or about May 23, 2014, subject to the terms, conditions, limits and exclusions contained therein.

Pursuant to the Policy, Factory Mutual has paid Ball Corporation $10,157,474.00 for certain portions of the losses and damages sustained by Ball Corporation that are covered by the Policy. Ball Corporation has contributed its deductible of $2,000,000 to pay for its losses and damages. Thus, the total gross loss as a result of the Incident was $12,157,474.00. Also,

983675.v2

PRIVILEDGED AND CONFIDENTIAL       BALL 007254

pursuant to the Policy, Factory Mutual is subrogated to the rights of Ball Corporation to the extent of its payment to Ball Corporation pursuant to the Policy.

### 3.   ACTION

Factory Mutual has employed attorneys, consultants, and experts to study and determine the cause and origin of the Incident.   Factory Mutual and Ball Corporation desire to prosecute claims against the entities and/or persons responsible for the damages and losses suffered by Factory Mutual and Ball Corporation arising out of the Incident.  It is believed at this time based on the information available to both Factory Mutual and Ball Corporation that the fire was caused by the improper maintenance and cleaning of the IBO on Line No. 2 by agents or employees of Air Tech of Michigan, Inc., and potentially other unknown entities. Accordingly, Factory Mutual and Ball Corporation agree to work jointly in pursuing various causes of actions against these and any other potentially responsible parties (the "Claims").

Ball Corporation hereby agrees that Factory Mutual may pursue the Claims and file a lawsuit which names Ball Corporation as the plaintiff in any federal or state court having jurisdiction over the subject matter and parties (the "Action").   Ball Corporation and Factory Mutual shall cooperate fully in their respective efforts to pursue recoveries for losses and damages arising from the Incident. Ball Corporation shall provide Factory Mutual with reasonable access to present and former employees of Ball Corporation as reasonably necessary to assist Factory Mutual in obtaining a recovery. Ball Corporation further understands that the prosecution of the Action will require access to its facilities, production of corporate documents, making witnesses available for interviews, depositions, or attendance at trial, and responding to oral and written discovery requests.

983675.v2

**PRIVILEDGED AND CONFIDENTIAL**       **BALL 007255**

Factory Mutual and Ball Corporation agree that all information and documents generated or exchanged by or between them before and after the commencement of any litigation shall be subject to the Common Interest Doctrine or similar joint privilege. The Common Interest Doctrine or similar joint privilege shall be in addition to any protections afforded to Factory Mutual or Ball Corporation by any attorney-client privilege and/or work product doctrine. The protections afforded Factory Mutual and Ball Corporation by any privilege or doctrine may only be waived, if at all, by mutual consent of both Factory Mutual and Ball Corporation. Factory Mutual and Ball Corporation each agree that they will assert the Common Interest Doctrine or similar joint privilege or any other applicable privilege in opposition to any discovery request for privileged or confidential documents or information propounded by any non-party to this Agreement which may seek confidential or privileged documents or information.

4. ATTORNEYS AND ATTORNEYS' FEES

Factory Mutual has retained the firm of Senak Keegan Gleason Smith & Michaud, Ltd., (hereinafter "SKGSM") to seek recovery of its damages as a result of the Incident. Factory Mutual has agreed to have SKGSM represent its subrogated interest

**Redacted**

Page 3 of 7

983675.v2

PRIVILEDGED AND CONFIDENTIAL          BALL 007256

"Adjusted Gross Recovery" is defined as the remaining recovery after reduction for all costs and expenses associated with the investigation of the Incident and the prosecution of the Action.

Ball Corporation also agrees to retain SKGSM to seek recovery of its uninsured and/or deductible interest.

## Redacted

Factory Mutual and Ball Corporation understand that while SKGSM is representing Factory Mutual and Ball Corporation in conjunction with this matter, SKGSM may subsequently be asked to represent an individual or entity whose interests are adverse to or different from those of Factory Mutual and Ball Corporation. The Rules of Professional Conduct which govern the practice of law prevent SKGSM from accepting such other representation while representing Factory Mutual and Ball Corporation, except with Factory Mutual's and Ball Corporation's consent.

Factory Mutual and Ball Corporation believe that the representation of Factory Mutual and Ball Corporation by SKGSM will not be adversely affected by such other representation, and hereby consent to it, so long as that other representation: (A) is not substantially related to this matter and would not involve use of confidential information obtained by SKGSM from Factory Mutual and/or Ball Corporation; and (B) does not involve claims based on conduct constituting a crime or fraud on the part of Factory Mutual and/or Ball Corporation or breach of a legal duty by

Page 4 of 7

983675.v2

**PRIVILEDGED AND CONFIDENTIAL**        **BALL 007257**

any director or the chief executive, operating, financial, legal, or accounting officers of Factory Mutual and/or Ball Corporation, or a breach of a legal duty by an employee of Factory Mutual and/or Ball Corporation if that employee is dealing directly with SKGSM.  In circumstances other than those listed above in (A) and (B), SKGSM may request that Factory Mutual and Ball Corporation consent to proceed with other representations on a case by case basis. SKGSM will promptly inform Factory Mutual and Ball Corporation of any such concurrent representation and Factory Mutual and Ball Corporation reserve the right to terminate this present engagement.

### 5. EXPENSES

Factory Mutual will advance all costs and expenses reasonably necessary to investigate and/or prosecute the Action. These costs and expenses include, for example, and not by way of limitation, items such as expert/consultant fees, travel costs, filing fees, court reporter fees, deposition transcripts, photocopying, trial exhibits, mediation costs, and attorneys' fees not included in Paragraph 4 above. In the event any recovery is obtained, by settlement, judgment or otherwise, Ball Corporation shall pay its *pro rata* share of 16.45% as defined in Paragraph 7, of all costs and expenses incurred, including those expenses incurred to date. In the event there is no recovery, Ball Corporation will be under no obligation to reimburse Factory Mutual.

### 6. PROSECUTION OF THE ACTION

In consideration of advancing all costs and expenses pursuant to Paragraph 5 and its interest in the Action, Factory Mutual shall have the right to control certain aspects of the litigation including dispositive motions, settlement discussions, the decision to settle and the amount to accept as settlement. Factory Mutual agrees that it will advise and consult with Ball Corporation regarding any aspect of the litigation, including settlement.

983675.v2

PRIVILEDGED AND CONFIDENTIAL       BALL 007258

## 7. DISTRIBUTION OF RECOVERY

In the event that any recoveries are obtained, by settlement, judgment or otherwise, Factory Mutual and Ball Corporation agree that all such recoveries will be used first to pay any and all investigation and litigation costs and expenses which have been incurred or paid by or with the approval of Factory Mutual. These costs and expenses will be satisfied in full before the distribution of any recoveries to Factory Mutual or Ball Corporation. After all outstanding investigation and litigation costs and expenses have been paid, any remaining recoveries shall be distributed to Factory Mutual and Ball Corporation on a *pro rata* basis. This means that Factory Mutual and Ball Corporation will share in the distribution of recoveries according to the proportionate share of each party's loss in relation to the total provable damages and losses which have arisen from the incident. Thus, Ball Corporation's *pro rata* share is 16.45% because it's deductible of $2,000,000.00 divided by the gross loss of $12,157,474.00 results in that percentage. Factory Mutual's *pro rata* share is 83.55% because its payment to Ball Corporation of $10,157,474 divided by the gross loss of $12,157,474 yields that percentage. Any recoveries shall be distributed to Factory Mutual and Ball Corporation only after deductions for attorneys' fees as set forth in Paragraph 4 and costs and expenses as set forth in paragraph 5.

FACTORY MUTUAL INSURANCE          BALL CORPORATION
COMPANY

Signature: _____      Signature: _Charles E. Baker_

Printed Name: _Annette S. Brooking_   Printed Name: _CHARLES E. BAKER_

Title: _Staff VP, Asst. Sr. Counsel_   Title: _VICE PRESIDENT_

Date: _March 5, 2018_                  Date: _March 13, 2018_

Page 6 of 7

983675.v2

**PRIVILEDGED AND CONFIDENTIAL      BALL 007259**

## 7. DISTRIBUTION OF RECOVERY

In the event that any recoveries are obtained, by settlement, judgment or otherwise, Factory Mutual and Ball Corporation agree that all such recoveries will be used first to pay any and all investigation and litigation costs and expenses which have been incurred or paid by or with the approval of Factory Mutual. These costs and expenses will be satisfied in full before the distribution of any recoveries to Factory Mutual or Ball Corporation. After all outstanding investigation and litigation costs and expenses have been paid, any remaining recoveries shall be distributed to Factory Mutual and Ball Corporation on a *pro rata* basis. This means that Factory Mutual and Ball Corporation will share in the distribution of recoveries according to the proportionate share of each party's loss in relation to the total provable damages and losses which have arisen from the incident. Thus, Ball Corporation's *pro rata* share is 16.45% because it's deductible of $2,000,000.00 divided by the gross loss of $12,157,474.00 results in that percentage. Factory Mutual's *pro rata* share is 83.55% because its payment to Ball Corporation of $10,187,474 divided by the gross loss of $12,157,474 yields that percentage. Any recoveries shall be distributed to Factory Mutual and Ball Corporation only after deductions for attorneys' fees as set forth in Paragraph 4 and costs and expenses as set forth in paragraph 5.

FACTORY MUTUAL INSURANCE                   BALL CORPORATION
COMPANY

Signature: _____       Signature: _____

Printed Name: Andrew S. Brooslin           Printed Name: _____

Title: Staff VP; Litigation Sr. Counsel    Title: _____

Date: March 5, 2018                        Date: _____

Page 6 of 7

983675.v2

SENAK KEEGAN GLEASON SMITH & MICHAUD, LTD.

Signature: _Mark B. Senak_

Printed Name: _Mark Senak_

Title: _Partner_

Date: _2-26-18_

983675.v2

**PRIVILEDGED AND CONFIDENTIAL        BALL 007260**