IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BALL CORPORATION, AN INDIANA CORPORATION AND FACTORY MUTUAL INSURANCE COMPANY, A RHODE ISLAND CORPORATION, AS SUBROGEE,<br>    Plaintiff,<br><br>    v.<br><br>AIR TECH OF MICHIGAN, INC.,<br>A MICHIGAN CORPORATION,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  CAUSE NO. 4:16-CV-00042-TLS-<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, Air Tech of Michigan, Inc. (hereinafter "Air Tech") by its counsel, Starr Austen & Miller, LLP, submits its Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment.  Material issues of fact exist as to whether named Plaintiff, Factory Mutual Insurance Company ("FMIC"), should remain as a party through the trial of this action.

### INTRODUCTION

After initiating this action in its own name, directing and controlling the litigation for nearly 3 and ½ years, and completing a long and comprehensive discovery process in the capacity of a "bona fide subrogee," FMIC now spuriously claims it is not a real party in interest and should be excused from the lawsuit. The objective of this maneuver is clear. An insurance company is not as sympathetic a plaintiff as is a company (even one as large as Ball Corporation ("Ball")) that has suffered a serious fire loss and, thus, Plaintiffs would prefer to proceed with Ball as the sole party requesting the staggering $12 million in alleged damages.

Plaintiffs' motion casually disregards important, undisputed realities of this case. It was Plaintiffs who drafted the Complaint naming FMIC and therein affirmatively alleged that Ball "transferred to [FMIC] all of its rights to recover" the amounts now in controversy. Dkt. No. 1, ¶ 10. While Plaintiffs may now desire a shift in strategy, such is not properly achieved under Rule 56. Beyond that, the transactional documents designated by Plaintiffs plainly evince an intent that any fruits of this lawsuit will be to the benefit of FMIC, who possesses the sole contractual right to not only conduct this litigation, but also to reach any compromised resolution short of trial. For the reasons

1

explained below, summary judgment for Plaintiffs on the issues they raise is inappropriate.

## STATEMENT OF MATERIAL FACTS

Plaintiffs' Complaint for Damages arises out of a May 23, 2014 fire at Ball's Monticello, Indiana aluminum can manufacturing plant. Dkt. No. 1 at ¶ 6, 7. On the date of the fire, Ball was insured by a policy of insurance with FMIC against, among other risks, losses cause by fire. *Id.* at ¶ 6-9. As a result of the aforementioned fire, Plaintiffs allege "approximately $12.1 million" in losses. *Id.* at ¶ 20.

On March 13, 2016, Ball and FMIC executed a Joint Prosecution Agreement ("JPA"). Dkt. No. 101-1 at p. 7-15. The JPA documented a payment by FMIC to Ball, pursuant to the subject insurance policy, of more than $10 million of the slightly more than $12 million adjusted loss, with the difference comprised of Ball's $2 million deductible under the insurance contract. *Id.* at p. 8 (§ 2 internally). The JPA affirmatively evinces the intent that this payment would cause FMIC to become "subrogated to the rights of Ball Corporation to the extent of its payment to Ball Corporation pursuant to the policy." *Id.* at p. 9 (§ 2 internally).

The JPA also reflects Ball's agreement that FMIC could "pursue the Claims [against Air Tech] and file a lawsuit which names Ball Corporation as the plaintiff." Dkt. No. 101-1 at p. 9 (§ 3 internally). However, notwithstanding Ball's status as a named party, the JPA makes clear that *FMIC* would have the exclusive right to control the material aspects of the litigation, including, specifically "dispositive motions, settlement discussions, the decision to settle and the amount to accept as settlement." *Id.* at p. 12 (§

6 internally). While Ball was obligated under the JPA to cooperate in FMIC's pursuit of the lawsuit, Ball did not retain discretion to control it. *Id.* In fact, one of Ball's Rule 30(b)(6) designees did not even know Ball was a party to the litigation at the time of his deposition on September 7, 2018, well over two years after suit was initially filed. Ex. 1, Deposition of Matthew Kirkpatrick, 15:16-16:16.

On May 18, 2016, Factory Mutual Insurance Company nominally "loaned" Ball Corporation $10,157,474.00. This "loan" bore no interest and was "repayable only in the event and to the extent that any net recovery is made." Dkt. No. 101-1 at p. 5-6. A "Loan Receipt" executed by Ball mandated that Ball "pledge to [Factory Mutual] Insurance Company ***whatever recovery*** we [*sic*] may make [in this litigation]." *Id.* (emphasis suppled).  The Loan Receipt further confirmed that while Ball may be named in the suit, the litigation would proceed "***at the expense of and under the exclusive direction and control of the [Factory Mutual] Insurance Company***." *Id.* (emphasis supplied). [1]

The operative Complaint for Damages was filed on May 23, 2016, precisely two years from the date of the fire and five days after the execution of the Loan Receipt. Dkt. No. 1; *see also* Dkt. No. 101-1 at p. 6. The Complaint names *both* Ball and FMIC as plaintiffs and affirmatively alleges that FMIC is a "*bona fide* subrogee of Ball" by virtue of the Loan Receipt and the "applicable insurance policy and related documents." Dkt. No. 1 ¶ 11. Relatedly, the Complaint contends that "Ball transferred to Factory Mutual

---

[1] In addition to the sum loaned by Factory Mutual Insurance company to Ball Corporation, Plaintiffs contend that Ball Corporation had "uninsured losses" and an "applicable deductible." Dkt. No. 1 ¶ 9. While the Ball's deductible in the amount of $2 million is referenced in the JPA, Ball has never specifically identified or quantified any "uninsured losses" during the pendency of this litigation.

3

*all* of its rights to recover the amount paid by Factory Mutual to Ball from any party responsible for causing the loss." Dkt. No. 1, ¶ 10 (emphasis supplied).

## STATEMENT OF GENUINE DISPUTES

1. Whether Ball intended to and did assign and/or transfer any right to recovery from this lawsuit to FMIC. Dkt. No. 1 ¶ 10; Dkt. No. 101-1 at p. 6; Kirkpatrick Dep., 15:16-16:16.

2. Whether FMIC is a "bona fide subrogee" of Ball. Dkt. No. 1 ¶ 11; Dkt. No. 101-1 at p. 6; *id.* at p. 8-9 (§ 2 internally).

3. Whether FMIC is the true owner of the rights sought to be enforced in this action. *Id.*

4. Whether FMIC is entitled to any fruits of this action. *Id.*

5. There is a conflict between the language of the JPA and Loan Receipt as to whether the parties intended to afford Ball any right to recover anything in this lawsuit and said conflict is unresolved by the designated evidence. Dkt. No. 101-1 at p. 6; *id.* at p. 13.

6. Whether Plaintiffs' inclusion of FMIC as a named plaintiff was the product of an honest mistake or, instead, a deliberate and/or strategic decision.

## ARGUMENT

**I.    The relief Plaintiffs' seek is beyond that which Rule 56 can properly afford.**

Federal Rule of Civil Procedure 56(a) allows a party to move for summary judgment as to any "claim or defense" and, upon the requisite showing, to receive a judgment on the claim or defense identified by its motion. In their motion for summary

4

judgment, Plaintiffs' seek this Court's declaration that Ball is the real party in interest and that the present lawsuit may be pursued solely in the name of Ball. Dkt. No. 100, p. 2-3. Problematically, nowhere does Plaintiffs' Complaint assert any claim for declaratory judgment or similar form of relief. *See* Dkt. No. 1. Indeed, Plaintiffs' current motion asks this Court for a judgment on matters never raised by the pleadings. This is wholly inappropriate in the context of a Rule 56 motion for summary judgment.

Plaintiffs' Complaint not only evinces no claim for the declaratory relief now sought, but further, contains allegations that are in direct conflict with said relief. *See generally*, Dkt. No. 1. To be sure, the patent incongruity between Plaintiffs' allegations and the position it assumes on summary judgment is truly puzzling. For example, the Complaint alleges:

> 10. Prior to the commencement of this action and in consideration of the payment by [FMIC] under the applicable insurance policy, BALL transferred to [FMIC] ***all of its rights to recover the amount paid by [FMIC] to Ball from any party responsible for causing the loss.***
>
> 11. Pursuant to the applicable insurance policy and related documents, ***[FMIC] is the bona fide subrogee of BALL.***

Dkt. No. 1 at ¶ 10-11 (emphasis supplied). By contrast, Plaintiffs now argue that "there has been no assignment of Ball's interest [in the litigation] to FMIC," Dkt. No. 101 at p. 5, and, implicitly, that "there was no subrogation." *Id.* at p. 7.

A motion for summary judgment is not the proper context for Plaintiffs to argue with themselves. If they wish to retreat from the allegations of their Complaint and re-plead their case in a manner consistent with their present arguments, Rule 15, not Rule

5

56, is the proper vehicle for them to do so.[2] As it stands, this Court should deny Plaintiffs' motion for summary judgment if for no other reason than it pursues a claim for relief conspicuously absent from the Complaint and is, therefore, not properly within the ambit of Rule 56.

**II.   Procedural defects aside, summary judgment as to the issues identified by Plaintiffs is inappropriate.**

Even assuming *arguendo* that Plaintiffs' motion seeks appropriate relief under Rule 56, the motion should, nevertheless, be denied. *First*, the language of the JPA and Loan Receipt sufficiently contradict Plaintiffs' contentions to create a material issue of fact precluding determination of the issues Plaintiffs' raise as a matter of law. *Second*, this Court has previously found in substantially similar circumstances, with identical language to the instant Loan Receipt, that the insurance company was a real party in interest. *See*, *Town of Goodland v. The Kessler Tank Co., Inc.*, 4:13-cv-00082-PPS-JEM, document 103. There is no reason here to deviate from this Court's order in *Town of Goodland*. *Third*, Plaintiffs are not entitled to relief from the consequences of their own strategic decision-making as to how they pled their case.

**A.   The terms of the JPA and Loan Receipt preclude summary judgment for Plaintiffs.**

In determining which of the Plaintiffs have a real stake in the litigation, two contracts, the Joint Prosecution Agreement and the Loan Receipt, and one pleading, Plaintiffs' Complaint, must be considered.  The JPA was signed more than two (2)

---

[2] Air Tech reserves the right to oppose any motion to amend the Complaint Plaintiffs may subsequently file under Rule 15.

months prior to the Loan Receipt. *Compare* Dkt. No. 101-1 at p. 13 *with id.* at p. 6. And the Loan Receipt was signed just five (5) days before Plaintiffs' Complaint for Damages was filed with this court. *See id.* at p. 6; *see also* Dkt. No. 1.

The JPA states that both FMIC and Ball would "share in the distribution of recoveries according to the proportionate share of each party's loss in relation to the total provable damages and losses which have arisen from the incident." Dkt. No. 101-1 at p. 13 (§ 7 internally). However, the subsequently executed Loan Receipt, contradicts the JPA, and unambiguously provides that FMIC is the only entity with a financial interest in the litigation. *Id.* at p. 6. Indeed, the operative language of the Loan Receipt states, unequivocally, that Ball transferred the *entirety* of any prospective verdict or settlement amount to FMIC with its "pledge to said Insurance Company *whatever recovery we* [*sic*] *may make.*" Dkt. No. 101-1 at p. 6 (emphasis supplied). Clearly, the allegation of Plaintiffs' Complaint to the effect that "Ball transferred to Factory Mutual *all of its rights to recover the amount paid* by Factory Mutual to Ball from any party responsible for causing the loss" aligns with the language of the Loan Receipt. Dkt. No. 1 ¶ 10 (emphasis supplied). Equally clear is that the language is diametrically opposed to both the JPA's provision regarding a share of proceeds as well as Plaintiffs' summary judgment arguments. This internal conflict between and amongst the documents germane to Plaintiffs' motion as to the intent of the parties is not resolved by the evidence presently before the Court and, therefore, presents a fact question which cannot be resolved at this juncture.

## B. <u>FMIC is a real party in interest.</u>

Indiana's Supreme Court has observed that "[a] real party in interest . . . is the person who is the true owner of the right sought to be enforced. He or she is the person who is entitled to the fruits of the action." *Hammes v. Brumley*, 659 N.E.2d 1021, 1030 (Ind. 1995). In Indiana, court's look to the intent of the parties to determine whether there has been an assignment. *See, E& L Rental Equip., Inc. v. Gifford*, 744 N.E.2d 1007, 1010-11 (Ind. Ct. App. 2001) (quoting *Brown v. Ind. Nat'l Bank*, 476 N.E.2d 888, 894 (Ind. Ct. App.1985)) ("In determining whether an assignment has been made, the question is one of intent. A written agreement assigning a subject matter must manifest the assignor's intent to transfer the subject matter clearly and unconditionally to the assignee"). In analyzing whether a payment from an insurance company to its insured entails an assignment or loan, the reviewing court must determine if the insured is required "to repay the loan only to the extent of his recovery in the suit; and whether such a transaction amounts to absolute payment of has the effect of satisfying such person's loss." *Klukas v. Yount*, 98 N.E.2d 227, 229 (Ind. Ct. App. 1951).

In considering a loan receipt containing substantially similar language as that now in issue, this Court has previously found that:

> Whether or not the payment from NFC fully compensated it for its loss, the Town does not point to any language in the Loan Receipt or any other agreement between it and NFC that provides for *any* recovery from the instant suit to go to the Town. Instead, the agreement provides that the Town's agent "hereby pledges to said Company *whatever* recovery may be paid directly to Town."(Emphasis added). There is no provision in the agreement for the Town to keep any amount recovered in excess of the loan payment. The Town argues that the amount it was paid did not make it whole, but the test is not whether the deal with the insurance company

8

> was one that fully satisfied the insured's losses; instead, the question is whether the assignee retains any interest in their claims. In this case, the text of the loan agreement provides for "*whatever* recovery" it obtains from the suit to be paid to the insurer. In addition, the agreement provides that NFC pays the costs of the lawsuit, including attorneys' fees, and directs the litigation. The Town does not dispute this, but argues that is insufficient to create a subrogated interest.

*Town of Goodland v. The Kessler Tank Co., Inc.*, 4:13-cv-00082-PPS-JEM, Dkt. No. 103 at 4-5.³

The Loan Receipt in the case at bar contains the same sweeping language as that considered in the *Town of Goodland*. Like Goodland, Ball has pledged "whatever recovery we may make" and provided that the loan was "repayable only in the event and to the extent of any net recovery" by its insurer, FMIC. The Loan Receipt also contained identical language to that examined in the *Town of Goodland*, whereby Ball surrendered "the exclusive direction and control" of the litigation to "the said Insurance Company." *Id*. The surrender of control coupled with the pledge of "whatever recovery" proved dispositive to this Court in *Town of Goodland*. 4:13-cv-00082-PPS-JEM, Dkt. No. 103 at 5 ("In this case, the Loan Receipt gives control over the instant lawsuit to NFC, and any amounts recovered from the suit, whether or not in excess of the payment amount, go to NFC. Even if the Town suffered losses in excess of the payment it received from NFC, it cannot recover them through this suit, and cannot even direct the course of the case"). From this, the *Town of Goodland* court concluded, "Plaintiff d[id]

---

³ The Town of Goodland, Ball Corporation and Factory Mutual Insurance Company were all represented by the same counsel. Presumably, that counsel authored the Loan Receipt used by both insureds, Town of Goodland and Ball Corporation.

not own the claims brought in the pending action." *Id.* at 6, citing, *Metal Forming Techs., Inc. v. Marsh & McLennan Co.*, 224 F.R.D. 431, 434 (S.D. Ind. 2004). As a result, the *Town of Goodland* court granted Defendant's Motion to Substitute Real Party in Interest, removing the Town of Goodland as the named plaintiff and, in its place, substituted National Fire and Casualty Company as the party plaintiff. *Id.*

It is true that, in the instant matter, unlike in *Town of Goodland*, Air Tech never sought the removal of Ball or the removal of FMIC as a named party. Rather, Plaintiffs seek partial summary judgment to permit removal of FMIC by claiming that, notwithstanding FMIC's institution of the action in which it named itself as a plaintiff, its direction and control over the litigation (on Plaintiffs' behalf) for the nearly 3 and ½ years it has been pending, and the fact that FMIC possesses sole discretion as to any compromised resolution of the claims, FMIC is not a real party in interest. Plaintiffs are not entitled to such relief.

The Loan Receipt which immediately preceded the litigation unambiguously transferred "whatever recovery" might be made in this lawsuit to Factory Mutual Insurance Company. Both the JPA and the Loan Receipt evince that Ball intended to (and understood that it did) surrender any ability to meaningfully control the prosecution of the claims now at bar and, indeed, to subrogate its rights to FMIC. *See* Dkt. No. 101-1 at p. 6, 9, 12; *see also* Kirkpatrick Dep 15:16-16:16. FMIC is "the true owner of the right sought to be enforced," and "the person who is entitled to the fruits of the action." *Hammes*, 659 N.E.2d at 1030

10

### C. <u>Plaintiffs are not entitled to relief or protection from the consequences of their own strategic decisions as to how they pled their case.</u>

Plaintiffs' contend that "[f]inding that Ball Corporation is the real party and correspondingly omitting FMIC as a named plaintiff would prevent the jury from impermissibly considering Ball Corporation's insurance status when deliberating on the merits of the claims and defenses." Dkt. No. 101 at p. 12-13. However, as observed above, Plaintiffs' contention in this regard is at odds with the manner in which they chose to plead their claims and, as a result, the defenses that Air Tech has pursued. Critically, the entire informational basis for Plaintiffs' current position was available to them at the time the Complaint was filed, yet they consciously proceeded with FMIC as a named plaintiff, thereby waiving any objection to the purportedly "impermissible" prejudices of which they now complain. *See e.g. Indiana State Hwy. Comm'n v. Curtis*, 704 N.E.2d 1015, 1019 (Ind. 1998) (waiver is a "voluntary and intentional relinquishment of a known right").

To be sure, Plaintiffs' Complaint specifically alleges that "Factory Mutual issued a policy of property insurance to Ball which provided coverage…to [] Ball" and that "[p]ursuant to said policy of insurance, Factory Mutual paid Ball for the covered expenses less the applicable deductible and uninsured losses." Dkt. No. 1 at ¶ 6, 9. More to the salient issue before the Court, Plaintiffs alleged that "under the applicable insurance policy, Ball transferred to Factory Mutual all of its rights to recover the amount paid" and that "Factory Mutual is the bona fide subrogee of Ball." Dkt. No. 1 ¶ 10-11. Plaintiffs have not filed an Amended Complaint withdrawing these allegations.

11

Thus, the issue of insurance coverage and whether the amounts paid were in excess of the coverage are within the ambit of the Complaint's allegations.

Air Tech also intends to dispute FMIC's entitlement to recover some or all of the amounts paid by FMIC to Ball. That is, Air Tech contends that FMIC's payment obligation to Ball under the applicable policy of insurance does not, perforce, define the amounts recoverable from Air Tech under the legal theories and claims presented. *See* Ex. 2, Defendant Air Tech's Supplemental Rule 26(a)(2)(B) Disclosures. Indeed, FMIC's contractual obligations are not informed by the common law recoveries the Plaintiffs seek in this action.

Finally, any prejudice in proceeding with FMIC as a named plaintiff was invited by the manner in which Plaintiffs' formulated their Complaint. While Rule 17(a) generally contemplates a liberal reshuffling of named parties "when the change [would be] merely formal and in no way alter[] the original complaint's factual allegations as to the events *or the participants*," that is not the case here, where Plaintiffs' Complaint affirmatively alleges that FMIC is a real party in interest. *Metal Forming Techs, Inc.*, 2004 U.S. Dist. LEXIS 21404 *16, 1:03-cv-0855, (S.D. Ind. Oct. 15, 2004). There was no "honest mistake" by the Plaintiffs, but rather, a deliberate and strategic choice to name FMIC. *See id.* at p. 17, 19. Now, as was the case in *Metal Forming Techs, Inc.*, Plaintiffs are, in effect, seeking a late game audible in an effort to "make this suit about a company ravaged by fire and not about an insurance company that paid for the fire's damage." *Id.* at 19-20. Even setting aside all of the foregoing (*i.e.* that Rule 56 does not afford the relief sought and that, at a minimum, there is a genuine issue of fact as to whether FMIC

is a real party in interest), Plaintiffs' motion should be denied if for no other reason than there being no compelling basis to afford Plaintiffs relief from their own litigation tactics.

## CONCLUSION

Summary judgment under Rule 56 is not intended to provide the relief Plaintiffs request of this Court. Even if it was, FMIC is a real party in interest, or at least there is sufficient evidence to establish a genuine dispute as to its status as same. Moreover, Plaintiffs identify no cogent basis as to why they should not be made to bear the consequences of their own litigation strategies and pleading choices. For all of these reasons, Plaintiffs' motion for summary judgment should be denied.

Respectfully submitted,

s/ Andrew B. Miller
Andrew B. Miller, I.D. #18795-45
Starr Austen & Miller, LLP
201 South Third Street
Logansport, IN  46947
(574) 722-6676
(574) 753-3299
miller@starrausten.com

ATTORNEYS FOR DEFENDANT
AIR TECH OF MICHIGAN, INC.,
A MICHIGAN CORPORATION

USDC IN/ND case 4:16-cv-00042-TLS document 104 filed 10/07/19 page 15 of 15

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2019, I served the foregoing on counsel of record via electronic mail.

Mark N. Senak
msenak@skgsmlaw.com

            s/ Andrew B. Miller
            Andrew B. Miller
            Starr Austen & Miller, LLP
            201 South Third Street
            Logansport, IN  46947
            (574) 722-6676
            (574) 753-3299
            miller@starrausten.com

100114.006/memo oppos to Plaintiffs MSJ

14