**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| BALL CORPORATION, an Indiana Corporation, and FACTORY MUTUAL INSURANCE COMPANY, a Rhode Island corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | 4:16-cv-00042-RL-APR |
| v. | ) ) | |
| AIR TECH OF MICHIGAN, INC., a Michigan corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

## REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs BALL CORPORATION and FACTORY MUTUAL INSURANCE COMPANY ("FMIC"), by and through its attorneys Mark N. Senak and Senak Keegan Gleason & Smith, Ltd., as their Reply in support of their Motion for Partial Summary Judgment states as follows:

### INTRODUCTION

The critical flaw in Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment is it has identified no evidence to contradict the plain, unambiguous terms of the Joint Prosecution Agreement ("JPA") and Loan Receipt, which evidence Ball Corporation has a $2 million interest in this claim and it will receive a *pro rata* share of any recovery. Defendant's attempt to create a genuine issue of material fact is nothing more than a mere denial of the undisputed facts that FMIC loaned Ball Corporation the sum of $10.1 million as part of the loss adjustment, and Ball Corporation agreed to repay the loan only in the event and to the extent that any recovery is made in the pending litigation. When these facts are unrebutted, under Indiana law, Ball Corporation is the real party in interest, and the lawsuit may be maintained in the name of Ball Corporation only.

I.    THE ISSUE OF WHO IS THE REAL PARTY IN
      INTEREST MAY BE DECIDED UNDER RULE 56

Defendant first contends Rule 56 does not allow the Court to decide the issue of who is the real party in interest. Defendant cites no case law, committee comments, or persuasive authority to support this proposition. This is not surprising since every court that has addressed the issue has reached the opposite conclusion.

Like the Plaintiffs in the present case, the defendant in *Gravel Trucking Co. v. Beelman Truck Co.*, 2014 WL 12781288 (N.D.Ind., 2014) filed a motion for partial summary judgment on the basis that the plaintiff was not the real party in interest. *Id.* at *1 - 2. Seeing no impediment to deciding the issue under Rule 56, the Northern District of Indiana entered summary judgment for the plaintiff. Id. at *7.

Similarly, in *Massey v. Rumsfeld*, 2001 WL 1397309 (S.D.Ind.,2001), the Southern District of Indiana entered summary judgment in favor of the defendant finding the plaintiff was not the real party in interest because the claims arose before the plaintiff filed for bankruptcy. *Id.* at *5. Neither the respondent nor the district court in *Massey* challenged whether the issue of real party in interest could be addressed via summary judgment.

Finally, in *Cosid, Inc., ex rel. La Fortune Ins. Co. v. Vessel ROLWi*, 1972 WL 327807 (C.A.7, 1972), the defendant moved for summary judgment on the ground that the suit was not filed by the real party in interest. The district court entered summary judgment in the defendant's favor. *Id.* The Seventh Circuit vacated the order and directed the missing parties be named as plaintiffs. *Id.* The Seventh Circuit in *Cosid* further ordered if an amended complaint was not filed adding the absent parties, the district court was permitted to reinstate summary judgment for the defendant. Indian state courts have reached a similar result. In none of these decisions, did the

2

trial court or the appellate court conclude the issue of who was the real party in interest could not

be raised via summary judgment.

## II.   THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT BALL CORPORATION HAS RETAINED AN INTEREST IN THE LITIGATION

The Defendant's primary contention is there is a genuine issue of material fact whether

Ball Corporation "intended to and did assign and/or transfer any right to recover from the lawsuit

to FMIC." [DE 104, p. 5 of 15.  Defendant maintains this is true because "the language of the JPA

and the Loan Receipt sufficiently contradict Plaintiff's contention to create a material issue of

fact." [DE 104 7 of 15]   However, contrary to the Defendant's claim, the terms of the JPA

complement, not contradict, the terms of the Loan Receipt, and when the two documents are read

together there is no genuine issue of material fact that Ball Corporation retained its right to recover

any damages awarded in the present case.

The Contemporaneous Document Doctrine provides that writings relating to the same

transaction may be construed together in determining the terms of the contract. *See, e.g., Gold v.*

*Cedarview Mgmt. Corp.*, 950 N.E.2d 739, 743 (Ind.Ct.App.2011) (citing *Salcedo v. Toepp*, 696

N.E.2d 426, 435 (Ind.Ct.App.1998)). This is true even if the documents are executed at different

times. *Lily, Inc. v. Silco*, LLC, 997 N.E.2d 1055, 1068 (Ind.App.,2013).

With regards to timing, the Defendant in the present case misstates the facts when it asserts

the Loan Receipt was executed after the JPA.  [DE 104, p. 8 of 15]  The Defendant erroneously

asserts that "[o]n March 13, **2016**, Ball and FMIC executed a Joint Prosecution Agreement." [DE

104, p. 3 of 15] (emphasis added)  In reality the JPA was signed by Ball and FMIC two years later

on March 13, **2018**.  [DE 101-1, p. 13-15 of 15]   However, even though the Loan Receipt and the

JPA were not executed contemporaneously, since the two documents involve the same parties and

relate to the same subject matter, the documents may be construed together in determining whether

summary judgment is appropriate.

It is a fundamental rule of contract construction that when a contract contains general and specific terms relating to the same subject matter, the specific terms control over the general. *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016) (citing *Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011). In the present case, the Loan Receipt is a single-page document, containing two paragraphs that acknowledge receipt of the amount of the loan from FMIC to Ball Corporation. [DE 101-1, p. 6 of 15] It contains only a general statement that the sum is "repayable only in the event and to the extent that any net recovery is made from any person or persons, corporation or corporations." *Id.* As noted by the Defendant, the Loan Receipt also contains a brief statement that as security for repayment of the loan, Ball Corporation pledges "whatever recovery" it may make in the pending litigation. The Loan Receipt does not define the terms "net recovery" or "whatever recovery," nor does it reference any anticipated litigation or define the rights and duties of the respective parties should any litigation ensue.

In contrast, the JPA is a seven-page document that defines, in detail, the rights and responsibilities of FMIC and Ball Corporation relative to the pending litigation. The JPA expressly states the amount of the total gross loss ($12.1 million), which is consistent with the amount claimed in the Complaint filed in the present case. [DE 1 ¶ 20, p. 3 of 6] The JPA further provides "Factory Mutual has paid Ball Corporation $10,157,474.00 for certain portions of the loss and damages sustained by Ball Corporation that are covered by the policy." [DE 101-1, p. 8 of 15] This amount is the same as the amount reflected on the Loan Receipt. [DE 101-1, p. 6 of 15] Of the $12.1 million in damages, the JPA affirmatively states that Ball Corporation "has contributed its deductible of $2 million to pay for its losses and damages." *Id.* at p. 8 of 15. The JPA makes clear that the parties intend to file a lawsuit as a result of the fire at the Monticello plant, and

specifically names the Defendant as the party responsible for causing the fire. *Id.* at p. 9 of 15. The JPA reflects Ball Corporation's consent that the lawsuit may be brought in its name, it agrees to cooperate in the prosecution of the lawsuit, and it consents to the joint retention of counsel and sets forth the fee agreement for the litigation.[1] *Id.* at pp. 10 – 13 of 15.

More critically, the JPA includes the method the parties agreed upon to calculate the "net recovery" referenced in the Loan Receipt. The JPA provides the net recovery will be calculated by subtracting the fees and expenses from the gross recovery, if any. *Id.* at pp. 13-14 of 15.

The JPA also defines the term "whatever recovery" used in the Loan Receipt. The JPA states that each party "will share in the distribution of recoveries according to the proportionate share of each party's loss in relation to the total provable damages and losses that have arisen from the incident." *Id.* The JPA further states that "[i]n the event there is no recovery, Ball Corporation will be under no obligation to reimburse Factory Mutual." *Id.* at p. 12 of 15.

Contrary to the Defendant's contention, the terms of the JPA and Loan Receipt do not contradict each other because the Loan Receipt does not contain any terms indicating how the "net recovery" would be calculated or the meaning of the phrase "whatever recovery." Instead, the terms of the JPA supplement the terms of the Loan Receipt by providing the mathematical formula for calculating the "net recovery," and detailing how "whatever recovery" that may be achieved will be allocated between the parties.

Moreover, the JPA, when read in conjunction with the Loan Receipt, evidences that the amount loaned by FMIC to Ball Corporation ($10.1 million) did not fully compensated Ball Corporation for the losses resulting from the fire because the amount claimed in the Complaint ($12.1 million) includes Ball Corporations deductible ($2 million) under the FM policy. The JPA

---

[1]    The specific terms of the fee agreement have been redacted from the Exhibit on the basis that they are subject to the attorney-client privilege.

and the Loan Receipt further reflect the parties did not transfer Ball Corporation's full right of recovery to FMIC.   To the contrary, the JPA and the Loan Receipt provide that "whatever recovery" is achieved from the Defendant, Ball Corporation will receive its *pro rata* share based on the percentage of its deductible relative to the total loss.

Since the terms of the JPA compliment, but do not contradict the provisions of the Loan Receipt, it is proper for the Court to construe these documents together when ruling on summary judgment.   Doing so evidences there is no genuine issue of material fact that the amount of the damages sought in the Complaint includes Ball's $2 million deductible and that Ball Corporation retained its right to receive its *pro rata* share of any ensuing recovery.   These two facts give Ball Corporation a sufficient and ongoing interest in the pending litigation to make Ball Corporation the real party in interest.

Defendant cites to the District Court's unpublished opinion in the *Town of Goodland v. The Kessler Tank Co.*, for the proposition that based on the terms of the Loan Receipt, FMIC is the real party in interest.   **Exhibit A**, Order, dated 07/25/16. Initially, this Court is not bound by the rulings of another district court. *See, e.g., TMF Tool Co., Inc., v. Muller*, 913 F.2d 1185, 1191 (7th Cir. 1990).   However, to the extent this Court wishes to consider the opinion in *Town of Goodland,* the opinion should be given little weight because it is factually distinguishable from the present case.

In *Town of Goodland*, the Town and its insurer signed a Loan Receipt that was substantially similar to the Loan Receipt in the present case.   Exhibit A, Order, dated 07/25/16, pp. 3 – 6.   In determining whether the Town or its insurer was the real party in interest, the District Court in *Town of Goodland* stated, "the test is not whether the deal with the insurance company was one that fully satisfied the insured's losses; instead, the question is whether the assignee [the insured]

6

retains any interest in their claim." *Id.* at pp. 4 – 5.  The court in *Town of Goodland* commented "the Town does not point to any language in the Loan Receipt ***or any other agreement*** between it and NFC [its insurer] that provides for any recovery from the instant suit go to the Town." *Id.* at p. 4 (emphasis added).

Unlike in *Town of Goodland*, there is another agreement in the present case that provides for any recovery to go to Ball Corporation.  The JPA in the present case clearly and unambiguously provides that Ball Corporation will receive its *pro rata* share of "whatever recovery" is achieved from the Defendant.  Because of the addition of the JPA in the present case, the ruling in *Town of Goodland* is distinguishable from the present case and does not create a question of fact that would negate partial summary judgment.

### III.   BALL'S DELEGATION OF CONTROL OVER THE LITIGATION TO FMIC DOES NOT NEGATE BALL'S STANDING AS THE REAL PARTY IN INTEREST

Defendant next contends that Ball Corporation's delegation of the right to control the litigation to FMIC somehow negates Ball Corporation's standing as the real party in interest. Defendant again cites to case law from this district or any other district that holds a party abdicates its standing as the real party in interest by delegating authority to control the litigation to another party.  The Seventh Circuit, however, analyzed a Loan Receipt with similar language in *First National Bank of Ottawa v. Lloyd's of London*, 116 F.2d 221 (7th Cir. 1940).

In *Bank of Ottawa*, the plaintiff and its insured executed a Loan Receipt as part of an insurance claim resulting from the theft of money being transported to the bank. *Id.* at 223.  The Loan Receipt provided the plaintiff agreed "to enter and prosecute suit against such person or persons, corporation or corporations on account of said claim for said loss, with all due diligence, at the expense and under the exclusive direction and control of said Franklin Fire Insurance Company." *Id.* at 223, fn 1.  This language from the Loan Receipt in *Bank of Ottawa* is virtually

identical to the language from the Loan Receipt in the present case. [DE 101-1, p. 6 of 15] Despite the parties' agreement in *Bank of Ottawa* to vest complete control of the litigation in the plaintiff's insurer, the Seventh Circuit did not find this arrangement negated the insured's standing as the real party in interest. *See also, Armour Pharmaceutical Co. v. Home Ins. Co.*, 60 F.R.D. 592, 594 (N.D.Ill., 1973) ("[t]he mere fact that court expenses and attorneys' fees are paid by [the insurer] does not make them a real party in interest). *Id.* at 594.

## IV.   PLAINTIFF'S LITIGATION STRATEGY IS IMMATERIAL TO WHETHER BALL CORPORATION IS THE REAL PARTY IN INTEREST

Defendant claims Plaintiffs' Motion for Partial Summary Judgment is a litigation strategy intended to prevent the jury from learning that Ball Corporation was insured for the losses sustained by the fire. While this may be true, Defendant has again offered no case law or other authority to support the argument that a party's litigation strategy is a factor that should be considered in deciding who is the real party in interest. Defendant suggests that Plaintiffs' effort to exclude Factory Mutual as a named plaintiff is the product of some nefarious strategy that will unduly prejudice the Defendant. Defendant claims it will be prejudiced because it intends to dispute the payments made under the FMIC policy are the appropriate measure of damages under Indiana law. [DE 104, p. 13 of 15] While this may be true, what the Defendant has failed to explain is how a finding that Ball Corporation is the real party in interest will deprive it from making this argument. Defendant will have the same opportunity to challenge Plaintiffs' damage calculations regardless of who is the named plaintiff in the case.

It likely comes as no surprise to the Court that the Defendant has commercial general liability insurance that provides coverage for the claims made in the present case. *See*, **Exhibit B**, Defendant's Response to Plaintiffs' Request for the Production of Documents, Response No. 25, and Doc. Nos. 80 – 85. It does not take a crystal ball to predict that the Defendant will move *in*

8

*limine*, based on Fed.R.Evid. 411, to exclude any reference to the Defendant's insurance coverage from being made before the jury.

Plaintiffs' Motion simply seeks to level the playing field. If it would be prejudicial for the jury to be informed the Defendant has insurance that covers this claim, it is equally prejudicial for the jury to be advised that Ball Corporation has insurance that covers its losses. Defendant bemoans the effort to designate the plaintiffs in conformity with the provisions of Rule 17 because doing so would likely thwart Defendant's litigation strategy of making this suit "about an insurance company that paid for the fire damage." [DE 104, p. 13 of 15] Defendant seemingly intends to parade Ball Corporation's insurance coverage before the jury, while keeping secret the millions of dollars in coverage the Defendant maintains to pay claims caused by the Defendant's negligent workmanship. Such a result would unduly prejudice the Plaintiffs, not the Defendant, and are contrary to notions of fundamental fairness.

## CONCLUSION

When read together, the plain unambiguous provisions of the Joint Prosecution Agreement and Loan Receipt establish that the amount claimed in the Complaint includes Ball Corporation's $2 million deductible interest under the FMIC policy. It is equally clear Ball Corporation has retained an interest in this claim because the Joint Prosecution Agreement and Loan Receipt provide Ball Corporation will receive its *pro rata* share of "whatever recovery" is achieved in the present litigation. Ball's delegation to FMIC of the right to control the litigation does not change these facts. Finally, ruling that Ball Corporation is the real party in interest will level the playing field and allow both parties to be judged by their conduct, not by whether they have insurance.

November 25, 2019           Respectfully submitted,

BALL CORPORATION and
FACTORY MUTUAL INSURANCE COMPANY

By: _____*s/ Mark N. Senak*_____
       Mark N. Senak, one of its attorneys

Mark N. Senak
SENAK KEEGAN GLEASON & SMITH, LTD
566 West Adams Street, Suite 750
Chicago, Illinois 60661
T: 312-214-1400 / F: 312-214-1401
Email: msenak@skgsmlaw.com

## CERTIFICATE OF SERVICE

I, Mark N. Senak, hereby certify that on November 25, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Indiana by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: _____*s/ Mark N. Senak*_____

Exhibit A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| TOWN OF GOODLAND,<br>Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 4:13-CV-82-PPS-JEM |
| | ) | |
| THE KESSLER TANK CO., INC.,<br>Defendant. | ) | |
| | ) | |

## ORDER

This matter is before the Court on a Motion to Substitute Real Party in Interest [DE 78], filed by Defendant Kessler Tank Company, Inc., on November 17, 2015. Plaintiff Town of Goodland filed a response on December 1, 2015, and an amended response on December 3, 2015. On December 7, 2015, Defendant filed a reply.

Defendant requests that the Court substitute National Fire & Casualty Company (NFC) for the Town of Goodland as the real party in interest. Plaintiff argues that the Town of Goodland is the real party in interest and requests that the motion be denied.

On October 10, 2013, Town of Goodland filed its Complaint in Newton Superior Court against The Kessler Tank Co., Inc., and on October 30, 2013, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1446. The Complaint includes claims for breach of contract, breach of an implied duty of workmanlike performance, breach of fiduciary duty, negligent misrepresentation, and negligence arising out of an agreement the Town had with Defendant to maintain and repair a water tower. In November 2011 the water tower collapsed and dispelled water onto the real property surrounding the tower. In January 2013 the Town signed a Loan Receipt with NFC, its insurer, to receive a sum of money to cover NFC's liability as insurer for damage resulting from the water tower collapse.

Defendant argues that the Town has contractually assigned to NFC, its insurer, any financial interest in litigation. The Town argues that the loan receipt provided that the money it received from NFC was merely a loan to be repaid from recovery and that it suffered losses not covered by the payment, so the Town is the proper party.

Federal Rule of Civil Procedure 17 provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Federal Rule of Civil Procedure 25 governs the substitution of parties and provides, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). Because jurisdiction over this action sounds in diversity, "the determination of the real party in interest is made based on Indiana law. *Metal Forming Techs., Inc. v. Marsh & McLennan Co.*, 224 F.R.D. 431, 434 (S.D. Ind. 2004) (citing *Shapo v. Underwriters Mgmt. Corp.*, 2002 WL 31155059, at *6 (N.D. Ill. 2002)).

"A real party in interest . . . is the person who is the true owner of the right sought to be enforced. He or she is the person who is entitled to the fruits of the action." *Hammes v. Brumley*, 659 N.E.2d 1021, 1030 (Ind. 1995). In Indiana, "In determining whether an assignment has been made, the question is one of intent. A written agreement assigning a subject matter must manifest the assignor's intent to transfer the subject matter clearly and unconditionally to the assignee." *E & L Rental Equip., Inc. v. Gifford*, 744 N.E.2d 1007, 1010-11 (Ind. Ct. App. 2001) (quoting *Brown v. Ind. Nat'l Bank*, 476 N.E.2d 888, 894 (Ind. Ct. App.1985)). Loans from insurance companies to an insured to cover its losses while a lawsuit is pending do not necessarily create an assignment of the claim to the insurance company. *See First Nat'l Bank of Ottawa v. Lloyd's of London*, 116 F.2d 221, 226 (7th Cir. 1940) ("[T]here is nothing in the loan receipt which releases any claim that

2

plaintiff has against the defendant upon the policy sued upon, and it is clear, as the District Court found, that the money was advanced as a loan."); *Barker v. Cole*, 396 N.E.2d 964, 971 (Ind. Ct. App. 1979).

To determine whether a payment from an insurance company is a loan or an assignment, a court must consider whether the payment for loss obligates the insured "to repay the loan only to the extent of his recovery in the suit; and whether such a transaction amounts to absolute payment or has the effect of satisfying such person's loss." *Klukas v. Yount*, 98 N.E.2d 227, 229 (Ind. Ct. App. 1951); *see also Steury v. N. Ind. Pub. Serv. Co.*, 510 N.E.2d 213, 215 (Ind. Ct. App. 1987) (finding no assignment where "the insurance policy did not completely cover the loss but contained a $100.00 deductible," leaving the plaintiff able to "sue in his own name and recover the full amount of the loss, distributing a proportion of the proceeds to the insurer" in repayment). "The general rule is that where the loss exceeds the amount of insurance paid, the insured may sue in his own name and recover the full amount of the loss" and the arrangement does not operate as an assignment, but if the insured "had full settlement by his insurance company . . . it is obvious that he has no interest in a claim and that he would not be the real party in interest. In such event his assignee or subrogee ought to be the party plaintiff." *Risner v. Gibbons*, 197 N.E.2d 184, 187 (Ind. Ct. App. 1964).

In this case, the agreement between the Town and NFC provides $784,799.66 "as a loan, without interest, . . . repayable only in the event and to the extent that a recovery, whether by settlement or lawsuit (the 'Suit'), is made from any . . . entity (the 'Tortfeasor'), not a party to this agreement, . . . resulting from the collapse of a municipal water tower on or about November 7, 2011, . . . and only to the extent that such Suit actually generates a monetary payment to the Town of Goodland from the Tortfeasors." The Town's agent pledges to NFC "whatever recovery may be

3

paid directly to Town, as a result of any such Suit, and agrees to deliver to the Company any documents necessary to show the Company's interest in said property." The Town agrees to file suit in its own name "but at the expense of and under the exclusive direction and control of said Company."

Defendant argues that pursuant to the Loan Receipt, the Town has transferred its interest in the litigation to NFC because the Town and NFC intended for the agreement to operate as payment of the Town's entire loss. Defendant points out that the Town was not required to repay the loan unless it made a recovery, and that the lawsuit seeking recovery is at the direction and control of NFC, giving the Town no ability to determine how the claim should be prosecuted. It argues that even if the Town suffered losses that are not covered by the payment made by the insurance policy, it has surrendered its ability to recover those losses to NFC, since the repayment is not limited to the cost of the loan. Accordingly, Defendant characterizes the loan receipt as a settlement and subrogation agreement. The Town argues that it has not transferred its interest in the suit because it was not fully compensated for its loss by the loan and the payment does not include its deductible interest.

Whether or not the payment from NFC fully compensated it for its loss, the Town does not point to any language in the Loan Receipt or any other agreement between it and NFC that provides for *any* recovery from the instant suit to go to the Town. Instead, the agreement provides that the Town's agent "hereby pledges to said Company *whatever* recovery may be paid directly to Town." (emphasis added). There is no provision in the agreement for the Town to keep any amount recovered in excess of the loan payment. The Town argues that the amount it was paid did not make it whole, but the test is not whether the deal with the insurance company was one that fully satisfied

4

the insured's losses; instead, the question is whether the assignee retains any interest in their claims. In this case, the text of the loan agreement provides for *"whatever* recovery" it obtains from the suit to be paid to the insurer.

In addition, the agreement provides that NFC pays the costs of the lawsuit, including attorneys' fees, and directs the litigation. The Town does not dispute this, but argues that is insufficient to create a subrogated interest. The Town cites to *Armour Pharmaceutical Company v. Home Insurance Company*, 60 F.R.D. 592 (N.D. Ill. 1973), in which the district court for the Northern District of Illinois noted, "The mere fact that court expenses and attorneys fees are paid by [an insurance company] does not make them a real party in interest." *Id.* at 594. However, that statement was in the context of the court's extended consideration of whether subrogation had occurred. In that case, the court noted that there had been "no actual subrogation or loan receipt. No payment has been made. Defendant assert[ed] that [the insurance company] has 'guaranteed' payment, and has sponsored the litigation," but the plaintiff maintained its ability to proceed in suit against the defendant, and the defendant did not present any "facts . . . to validate the proposition that the guarantee is absolute." *Id.* The facts in *Armour Pharmaceutical* differ from those before the Court: in this situation, payment has already been made to the insured, the insurance company has sponsored and is directing the litigation, and the Town is not entitled to any recovery from the litigation.

In this case, the Loan Receipt gives control over the instant lawsuit to NFC, and any amounts recovered from the suit, whether or not in excess of the payment amount, go to NFC. Even if the Town suffered losses in excess of the payment it received from NFC, it cannot recover them through this suit, and cannot even direct the course of the case. Accordingly, "under Indiana law, Plaintiff[

5

is] not the real part[y] in interest because of the total assignment of [its] claims against [the defendant] to [the insurance company]. In other words, Plaintiff[] do[es] not own the claims brought in the pending action." *Metal Forming Techs.,* 224 F.R.D. at 434; *see also E & L Rental Equip.*, 744 N.E.2d at 1011 ("After a cause of action is fully assigned, the assignor is no longer a proper party to sue and has no right of action."). National Fire and Casualty Company must be substituted for Plaintiff as the real party in interest pursuant to Federal Rules of Civil Procedure 17 and 25.

For the foregoing reasons, the Court hereby **GRANTS** the Motion to Substitute Real Party in Interest [DE 78]. The Court **SUBSTITUTES** National Fire and Casualty Company for Town of Goodland. The Court **DIRECTS** the Clerk of Court to amend the caption to show "National Fire and Casualty Company " in place of Town of Goodland as party plaintiff.

So ORDERED this 25th day of July, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BALL CORPORATION, AN INDIANA CORPORATION AND FACTORY MUTUAL INSURANCE COMPANY, A RHODE ISLAND CORPORATION, AS SUBROGEE, Plaintiff, | ) ) ) ) ) ) |
| v. | ) CAUSE NO. 4:16-CV-00042-PPS-APR ) |
| AIR TECH OF MICHIGAN, INC., A MICHIGAN CORPORATION, Defendant. | ) ) ) ) |

## DEFENDANT AIR TECH OF MICHIGAN, INC.'S RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Comes now Defendant, Air Tech of Michigan, Inc., by counsel, Starr Austen & Miller, LLP, and for its Responses to Plaintiff's First Request for the Production of Documents states as follows:

### REQUESTS TO PRODUCE

1.     Any and all documents reviewed or referred to for the purpose of obtaining information responsive to Plaintiff's Interrogatories, the allegations of Plaintiff's Complaint, or to formulate Defendant's Affirmative Defenses.

**RESPONSE:** See, attached documents.

Discovery continues.

2.     Any and all documents containing any statements of any witnesses to the Occurrence or of any individuals who claim to have knowledge, or who may have

knowledge of the Occurrence, the allegations of the Complaint, and/or Defendant's Answer and Affirmative Defenses.

**RESPONSE:**  See, documents attached behind Tab A.  Bate stamp pages 1-24.

Discovery continues.

3.      All photographs, slides, motion pictures, videotapes, and recordings taken prior to, during, or subsequent to the Occurrence alleged in Plaintiff's complaint of IBO No. 2, the Monticello plant, or other objects involved in the alleged Occurrence.

**RESPONSE:**  Defendant objects to the extent this request seeks protected work-product.  Without waiving the foregoing objection and subject to same, see, photographs attached behind Tab B.  Bate stamp pages 25-32.

Discovery continues.

4.      Any and all documents reflecting communications between the Respondent and Ball Corporation regarding work performed or services rendered by the Respondent, or the Occurrence alleged in Plaintiff's Complaint.

**RESPONSE:**  See, documents attached behind Tab C.  Bate stamp pages 33-73.

Discovery continues.

5.      Any and all documents reflecting communications between the Respondent and any third-party regarding work performed for Ball Corporation, IBO No. 2, the Occurrence alleged in Plaintiff's Complaint, including, but not limited to,

Respondent's insurer and any consultants hired or retained by or on behalf of the Respondent.

    **RESPONSE:**  Objection.  This request seeks documents protected from disclosure by Fed. R. of Evid. 502.

    Discovery continues.

6.    Any and all documents relating to the services rendered or provided by the Respondent to the Ball Corporation regarding IBO No. 2.

    **RESPONSE:**  See, documents attached behind Tab C.  Bate stamp pages 33-73.

    Discovery continues.

7.    Any and all documents relating to or any materials or substance used in the course providing services to the Ball Corporation and/or, performing work on IBO No. 2 by the Respondent including, but not limited to:

    a.    any Material Safety Data Sheets;

    b.    the instructions or directions for application of any material or substance used;

    c.    any warnings associated with the use or application of the material or substance; and

    d.    the invoice reflecting the purchase of any materials or substances used by the Respondent from the manufacturer or distributor.

    **RESPONSE:**  Defendant is not presently in possession of any documents responsive to this request.

    Discovery continues.

8.      Any and all documents relating to the design of IBO No. 2.

**RESPONSE:**  Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

9.      Any and all documents relating to any examinations or inspections of IBO No. 2.

**RESPONSE:**  Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

10.     Any and all documents relating to any repairs to IBO No. 2.

**RESPONSE:**  Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

11.     Any and all documents relating to any service or maintenance to IBO No. 2.

**RESPONSE:**  See, documents attached behind Tab C.  Bate stamp pages 33-73.

Discovery continues.

12.     Any and all documents relating to any testing of IBO No. 2.

**RESPONSE:** Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

13.     Any and all documents relating to any alteration or modification to IBO No. 2.

**RESPONSE:** Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

14.     Any and all documents relating to any prior damage to IBO No. 2 before the Occurrence.

**RESPONSE:** Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

15.     Any and all documents relating to any warnings, directions, or instructions Respondent provided to the Town of Goodland regarding the condition, use, or operation of IBO No. 2.

**RESPONSE:** Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

16.     Any and all documents reflecting any rules, regulations, guidelines, standards, recommendations, or industry customs and practices the Respondent consulted, reviewed, followed, or complied with while performing any work, service, or activity regarding IBO No. 2.

> **RESPONSE:** Defendant is not presently in possession of any documents responsive to this request.
>
> Discovery continues.

17.     The complete personnel file of any individual, agent, or employee who performed services for the Ball Corporation at the Monticello plant on behalf of the Respondent.

> **RESPONSE:** See, documents attached behind Tab D.  Bate stamp pages 74-79.
>
> Discovery continues.

18.     Any and all documents relating to any training material the Respondent provided to any individual who inspected, examined, serviced, repaired, maintained, or tested IBO No. 2.

> **RESPONSE:** Defendant is not presently in possession of any documents responsive to this request.
>
> Discovery continues.

19.     Any and all documents relating to the design of IBO No. 2 that caused or contributed to the Occurrence.

**RESPONSE:** Defendant objects to the extent this seeks to trigger a selection process that would invade upon the mental impressions and opinions of counsel. Subject to this objection Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

20. Any and all documents relating to any improper service, maintenance or testing of IBO No. 2 that caused or contributed to the Occurrence.

**RESPONSE:** Defendant objects to the extent this seeks to trigger a selection process that would invade upon the mental impressions and opinions of counsel. Subject to this objection Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

21. Any and all documents relating to any improper repairs to IBO No. 2 that caused or contributed to the Occurrence.

**RESPONSE:** Defendant objects to the extent this seeks to trigger a selection process that would invade upon the mental impressions and opinions of counsel. Subject to this objection Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

22. Any and all documents relating to any alterations or modifications to IBO No. 2 that caused or contributed to the occurrence.

**RESPONSE:** Defendant objects to the extent this seeks to trigger a selection process that would invade upon the mental impressions and opinions of counsel. Subject to this objection Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

23.     Any and all artifacts, sections, pieces, or components removed from IBO No. 2.

**RESPONSE:** Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

24.     Any and all documents relating to any lawsuits, administrative proceedings, complaints, or notices in which it was alleged or asserted that Respondent negligently rendered services, breached any contractual provision or warranty, or violated any administrative rule or regulation relating to any services provided or work performed by the Respondent.

**RESPONSE:** Defendant is not presently in possession of any documents responsive to this request.

Discovery continues.

25.     Any and all documents relating to any policy of insurance that may provide the Respondent with a defense or coverage for the occurrence, including, but not limited to, a copy of the policy, any documents tendering the defense of the claims

alleged in Plaintiff's Complaint to any Person, any documents denying coverage for the occurrences alleged in Plaintiff's Complaint, and any documents reserving the insurer's rights to provide a defense or coverage for the occurrence.

> **RESPONSE:**  Objection.  The insurance coverage maintained by Defendant is not relevant or reasonably calculated to lead to the discovery of relevant evidence.  Notwithstanding the above and foregoing objection and subject to same, see, documents attached behind Tab E.  Bate stamp pages 80-85.

26.    Any and all documents or reports reviewed or prepared by any expert witness who will testify at trial on Respondent's behalf.

> **RESPONSE:**  At the present time, Defendant has not determined what experts will be called to testify at trial of this matter. Defendant will provide information responsive to its testifying experts in accordance with deadlines established pursuant to the court's case management or pre-trial order.

> Discovery continues.

27.    Any and all documents reports reviewed or prepared by any person who will offer any opinion testimony at trial on Respondent's behalf.

> **RESPONSE:**  No determination has yet been made as to who Defendant will call to testify at trial, and Defendant is not presently in possession of documents responsive to this request. Defendant will disclose its trial witnesses and exhibits consistent with the court's case management or pre-trial order.

> Discovery continues.

28.     A copy of the curriculum vitae, resume, or description of credentials for each person who will offer an opinion or expert testimony on Respondent's behalf at trial.

> **RESPONSE:** At the present time, Defendant has not determined what experts will be called to testify at trial of this matter. Defendant will provide information responsive to its testifying experts in accordance with deadlines established pursuant to the court's case management or pre-trial order.
>
> Discovery continues.

29.     Any and all documents, exhibits, or any other tangible evidence which the Respondent intends to introduce into evidence or to use at trial or is considering using at trial.

> **RESPONSE:** See, attached documents.    Defendant reserves the right to supplement this response.
>
> Discovery continues.

30.     Any and all documents, tangible things, or other evidence relating to Respondent's defenses to the claims alleged in Plaintiff's Complaint or the cause(s) of the occurrence.

> **RESPONSE:** See, attached documents.    Defendant reserves the right to supplement this response.
>
> Discovery continues.

31.     An Affidavit executed by the Respondent's representative responsible for responding to Plaintiff's First Request for the Production of Documents verifying that a diligent search was conducted for the requested documents, and all documents found responsive to this request are or will be produced.

**RESPONSE:** Objection. Defendant is not required to create documents in response to requests for production and this request is, therefore, improper under Federal Rule of Civil Procedure 34.

STARR AUSTEN & MILLER, LLP

By:

Andrew B. Miller
I.D. #18795-45
201 South Third Street
Logansport, IN 46947
(574) 722-6676

ATTORNEYS FOR DEFENDANT
AIR TECH OF MICHIGAN, INC.

### CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of February, 2017, a true and correct copy of the above and foregoing Defendant Air Tech of Michigan, Inc.'s Responses to Plaintiff's First Request for the Production of Documents was served upon Mark N. Senak, Esq., Senak Keegan Gleason Smith & Michaud, Ltd., 621 South Plymouth Court, Suite 100, Chicago, IL 60605 by depositing the same in the United States Mail with sufficient first class postage affixed.

Andrew B. Miller

100114.006/RFP to Air Tech - responses



# The Cincinnati Insurance Company

A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

## COMMON POLICY DECLARATIONS

Billing Method: AGENCY BILL

POLICY NUMBER   EPP 005 94 59 / EBA 005 94 59

**NAMED INSURED** AIR TECH OF MICHIGAN INC & MIDWEST SERVICES LLC
4652 49TH ST
**ADDRESS** HOLLAND, MI 49423-9039
(Number & Street,
Town, County,
State & Zip Code)

**Previous Policy Number:**
EPP0059459

**Policy Period:**   At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
   Policy number:  EPP 005 94 59          FROM: 03-15-2014   TO: 03-15-2015

**Automobile and / or Garage**
   Policy number:  EBA 005 94 59          FROM: 03-15-2014   TO: 03-15-2015

Agency   LIGHTHOUSE INSURANCE GROUP, INC. 21-190
City      GRAND RAPIDS, MI

**Legal Entity / Business Description**

ORGANIZATION (ANY OTHER)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA4274MI | 01/05 | MICHIGAN - NOTICE TO POLICYHOLDERS |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/08 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4108MI | 09/09 | MICHIGAN CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/08 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4245MI | 06/03 | MICHIGAN CHANGES - CANCELLATION AND NONRENEWAL |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IL0022 | 05/87 | EFFECTIVE TIME CHANGES - REPLACEMENT OF 12 NOON |
| FM502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GA532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| MA559 | 05/10 | CONTRACTORS' EQUIPMENT (AND TOOLS) COVERAGE PART DECLARATIONS |
| AA505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |
| USC513 | 05/10 | COMMERCIAL UMBRELLA LIABILITY COVERAGE PART DECLARATIONS |

0080

**IA 509 01 12**

**Page  1 of  2**

EPP 005 94 59 / EBA 005 94 59

03-01-2014 11:03

Countersigned _____ By _____
                        (Date)                           (Authorized Representative)

0081

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 4652 49TH ST |  |  |  |
|  | HOLLAND, MI 49423-9039 |  |  |  |
| 2 | 5901 139TH AVE |  |  |  |
|  | HOLLAND, MI 49423-9725 |  |  |  |
| 3 | 4152 FILLMORE RD |  |  |  |
|  | HOLLAND, MI 49423-8538 |  |  |  |

0082

IA 904 04 04

# THE CINCINNATI INSURANCE COMPANY

### A Stock Insurance Company

## COMMERCIAL GENERAL LIABILITY COVERAGE
## PART DECLARATIONS

| Attached to and forming part of POLICY NUMBER: EPP 005 94 59 |
| --- |
| Named Insured is the same as it appears in the Common Policy Declarations |

**LIMITS OF INSURANCE**

| | | |
| --- | --- | --- |
| EACH OCCURRENCE LIMIT | $2,000,000 | |
| GENERAL AGGREGATE LIMIT | $4,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $4,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $2,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $ | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| --- | --- | --- | --- | --- | --- | --- |
| | | A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| LOC. 1 - MI | | | | | | |
| HEATING-COMB. HEATING & AIR | 95647 | B 49,200 | 18.927 | 12.685 | 931 | 624 |
| AUTOMATIC ADDITIONAL INSUREDS | 29939 | | | 3.5% | | 100 MP |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM  $1,655

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
| --- | --- | --- |
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0168 | 10/92 | MICHIGAN CHANGES |
| GA340 | 10/01 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| GA346 | 11/02 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") |
| GA382 | 03/02 | FUNGI OR BACTERIA EXCLUSION |
| GA472 | 10/01 | AUTOMATIC ADDITIONAL INSURED - WHEN REQUIRED IN CONTRACT OR AGREEMENT WITH YOU |
| GA481MI | 09/02 | MICHIGAN CHANGES |

0083

GA 532 07 08          EPP 005 94 59          Page 1 of 1

# THE CINCINNATI INSURANCE COMPANY

## COMMERCIAL UMBRELLA LIABILITY COVERAGE
## PART DECLARATIONS

Previous Policy Number  EPP0059459

| Attached to and forming part of POLICY NUMBER  EPP 005 94 59 | Effective Date:  03-15-2014 |
|---|---|

**NAMED INSURED** is the same as it appears in the Common Policy Declarations unless another entry is made here.

**LIMITS OF INSURANCE**
$    3 ,000,000 Each Occurrence Limit        $        3 ,000,000 Aggregate Limit

**ADVANCE PREMIUM** $        2,625
Applicable to Premium, if box is checked:
☐ Subject to Annual Adjustment
☐ Subject to Audit (see Premium Computation Endorsement for Rating Basis)

### SCHEDULE OF UNDERLYING INSURANCE

| Insurer, Policy Number & Period: | Underlying Insurance: | Underlying Limits: |
|---|---|---|
| **(a)** CINCINNATI INS CO<br>WC 190 98 52<br>10-01-2013 TO 10-01-2014 | Employer's Liability | Bodily Injury by Accident:<br>$    1,000,000   Each Accident<br>Bodily Injury by Disease:<br>$    1,000,000   Each Employee<br>Bodily Injury by Disease:<br>$    1,000,000   Policy Limit |
| **(b)** CINCINNATI INS. CO.<br>EPP 005 94 59<br>03-15-2014 TO 03-15-2015 | ☒ Commercial General Liability<br>Including:<br>☒ Products-Completed Operations Coverage<br><br>☐ Cemetery Professional<br>☐ Druggist Professional<br>☐ Funeral Service Provider<br>☐ Pedorthists Professional<br><br>or<br><br>☐ Business Liability Including:<br>☐ Funeral Service Provider<br>☐ Druggist Professional | Bodily Injury and Property Damage Liability:<br>$    2,000,000 Each Occurrence Limit<br>$    4,000,000 General Aggregate Limit<br>$    4,000,000 Products-Completed Operations Aggregate Limit<br><br>Personal and Advertising Injury Limit:<br>$    2,000,000 Any One Person or Organization |
| **(c)** CINCINNATI INS. CO.<br>EBA 005 94 59<br>03-15-2014 TO 03-15-2015 | Automobile Liability<br>Including:<br>☐ Owned Autos<br>☐ Non-Owned Autos<br>☐ Hired Autos<br>☒ Any Auto | Bodily Injury Liability Limit:<br>$        Each Person<br>$        Each Occurrence<br>Property Damage Liability Limit:<br>$        Each Occurrence<br>or<br>Bodily Injury Liability and / or Property Damage Liability or Both Combined Limit:<br>$    1,000,000 Each Occurrence |
| **(d)** | Professional | $<br>$        Aggregate<br><br>**0084** |
| **(e)** | Employee Benefit Liability | $        Each Employee Limit<br>$        Aggregate Limit |

USC513 05 10                EPP 005 94 59                        Page 1 of 2

| | | | |
|---|---|---|---|
| (f) | Liquor Liability | $ | Each Common Cause Limit |
| | | $ | Aggregate Limit |

**Other**

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

| | | |
|---|---|---|
| US101UM | 12/04 | COMMERCIAL UMBRELLA - TABLE OF CONTENTS |
| US3010 | 12/04 | CONTRACTORS LIMITATIONS - INCLUDING EXCESS WRAP-UP COVERAGE |
| US302 | 12/04 | POLLUTANT EXCLUSION - OTHER THAN AUTO |
| US3043 | 12/04 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS ("EIFS") AND DIRECT-APPLIED EXTERIOR FINISH SYSTEMS ("DEFS") - BROAD FORM |
| US3048 | 12/04 | FUNGI OR BACTERIA EXCLUSION |
| US4044MI | 05/04 | MICHIGAN CHANGES |
| US4062 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION |

0085